FIFTH DIVISION
December 4, 2009

1-07-3244

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 19273 |
| | ) | |
| ALFREDO RAMOS, | ) | The Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE TOOMIN delivered the opinion of the court:

In this appeal, we determine whether the trial court's impromptu comments to the jury served to encourage superficial deliberations, minimize the State's burden of proof, or hasten the jury's verdict. Alfredo Ramos was convicted of two counts of first degree murder and sentenced to a term of natural life in prison. On appeal, defendant contends the State's closing argument as well as the trial judge's comments to the jury denied him a fair trial. He does not challenge the sufficiency of the evidence or the sentence imposed. For the reasons explained herein, we affirm defendant's conviction and sentence.

BACKGROUND

Defendant and his codefendant, Marcos Ramirez, were charged by indictment with the first degree murders of Marcos Rodriguez and Oscar Gutierrez Suarez[1]. Following separate, simultaneous jury trials, defendant was convicted and subsequently sentenced to serve a term of natural life imprisonment.

The events giving rise to the prosecution occurred on July 10, 2001, when Marcos Rodriguez and Oscar Gutierrez Suarez were shot in a Burger King parking lot in Chicago. Rodriguez and Suarez were passengers in a vehicle driven by Julio Avila. Suarez and Avila were, at that time, narcotics dealers. Earlier that week, on July 7, 2001, Suarez approached Avila looking to sell a kilogram of cocaine. Avila knew an individual by the name of "Nok" who might be interested in purchasing it. Nok agreed to purchase the kilogram in exchange for $14,000 and two laptop computers. At the time of the exchange, Nok did not give Avila any money. Instead, the two men agreed to meet the next day. The following day Nok gave Avila $2,000 and told him he would give him an additional $3,000 and the two laptops on July 9, 2001.

Suarez, along with Marcos Rodriguez and Gladys Torres, picked up Avila from his job at about 11:30 p.m. on July 9, 2001. Avila had not previously met the two passengers. In turn, Avila spoke with Nok, who told him that someone else would be delivering the $3,000. Suarez then received a call on his cellular phone from a person calling on behalf of Nok. They agreed to

---

[1] Given the scope of defendant's appeal, we limit our discussion to the evidence implicated by the assignments of error. Additional facts relevant to our analysis will be provided as necessary. We likewise note that Ramirez is not a party to the present appeal.

meet near Foster and Pulaski. Suarez received another call; Avila took the call and agreed to meet the caller in Chicago's Wicker Park neighborhood. Avila asked for and received a number to call on arrival in Wicker Park. Rodriguez wrote the pager number down on a one-dollar bill as Avila repeated it from the caller. They sent a page and received a call back directing them to the parking lot in the rear of a Burger King restaurant on North Milwaukee Avenue.

Once the car was parked, Avila stepped out of the car so he could be recognized. During his last conversation with the caller about the meeting, Avila mentioned that he was wearing an "Ecko" T-shirt so the caller could identify him. Avila walked toward Honore Street and stood on the sidewalk where he saw a person standing next to a pay phone. This person, identified as Marcos Ramirez, walked past Avila, who then began to walk back toward the Burger King parking lot. Avila then saw another man approaching from the drive-thru lane, who Avila thought was the person he was meeting to get the $3,000. This individual, identified as defendant, increased his pace, drew a gun, aimed, and fired at Avila. Defendant continued to fire into the victims' vehicle five or six times. Avila began to run away and defendant followed. When Avila turned he could see the gun pointed at him, but he never heard any additional shots. Defendant then fled in another direction.

Gladys Torres climbed into the front seat of the vehicle and began to drive to get help for Rodriguez and Suarez, who had been shot by defendant. She drove down North Avenue until she encountered a police car. Shortly thereafter, Avila returned to the area in a taxicab. Both Torres and Avila spoke with detectives on the scene and at Area 5 police headquarters. Based on these conversations and evidence recovered at the scene, detectives traced the pager number written on

the dollar bill to Ramirez. After Ramirez's photograph was placed in a photo array, he was identified by Avila. In turn, the detectives located Ramirez and took him into custody. Utilizing information obtained from Ramirez, detectives began to look for defendant. Following his arrest, defendant was identified by both Torres and Avila in a lineup.

During the course of custodial questioning, defendant gave an oral statement to investigators inculpating himself in the shooting. According to defendant, he and his cousin, Ramirez, were going to set someone up, take $3,000 from him, and split the proceeds. Ramirez told defendant they would meet the man, who would be wearing an "Ecko" T-shirt at the Burger King on Milwaukee Avenue in Wicker Park. Ramirez provided him with a loaded .380-caliber handgun. Defendant walked through the drive-thru lane toward the individual in the "Ecko" shirt who had just gotten out of a car, pulled his pistol, and demanded money. He claimed the man in the "Ecko" shirt yelled to the passengers in the vehicle, "oh, shit, get the cannon." According to defendant, he then saw the male in the passenger seat reach beneath the driver's seat. Defendant began to fire at the vehicle until he was out of bullets. He denied ever seeing the passenger with a gun.

Defendant did not testify. Following arguments and instructions, the jury returned a verdict of guilty. Thereafter, he was sentenced to a term of natural life. He now appeals.

ANALYSIS

As noted, defendant does not challenge the sufficiency of the evidence. Instead, his arguments urging reversal are based upon the contention that he was denied a fair trial by virtue of the State's closing argument and certain comments made by the trial judge to the jury.

4

1-07-3244

Defendant concedes these claimed errors were not objected to at trial or specifically raised in his posttrial motion[2]. The State argues they are thereby forfeited[3]. Defendant responds that the "plain-error" doctrine applies and permits review.

It is axiomatic that a defendant must object contemporaneously as well as in a posttrial motion in order to preserve issues for our review. *People v. Lewis*, 234 Ill. 2d 32, 40, 912 N.E.2d 1220, 1225 (2009); see also 725 ILCS 5/116-1 (West 2006). Ordinarily, failure to do so would operate to forfeit the claim on appeal, however, forfeiture is not an absolute bar to our review. Established precedent instructs that the rules of forfeiture present limitations on the parties and not on the reviewing court. *People v. Davis*, 213 Ill. 2d 459, 470, 821 N.E.2d 1154, 1161 (2004). Moreover, Supreme Court Rule 615(a), known as the "plain-error" doctrine carves out an exception to permit review of issues otherwise procedurally defaulted. *Lewis*, 234 Ill. 2d at 42,

[2] Defendant raised a general objection in his posttrial motion to the closing arguments and singled out an aspect not raised on appeal. However, general objections in a posttrial motion are not sufficient to preserve an issue for appeal, even if a contemporaneous objection was made at trial. See *People v. Robinson*, 238 Ill. App. 3d 48, 56, 606 N.E.2d 122, 128 (1992). As noted, there was no objection interposed during trial.

[3] Both parties discuss the issues presented in terms of "waiver." Noting that these matters are more correctly viewed as "forfeitures" or "procedural defaults," in that they could have been raised, but were not, we utilize those terms instead. See *People v. Blair*, 215 Ill. 2d 427, 443-44, 444 n.2, 831 N.E.2d 604, 615, 615 n.2 (2005) (addressing the proper usage of terms "forfeit," "waive," and "procedurally default").

5

1-07-3244

912 N.E.2d at 1226-27; 134 Ill. 2d R. 615(a). As our supreme court observed in *People v. Piatkowski*:

> "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the serousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007), citing *People v. Herron*, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479 (2005).

Manifestly, "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." 134 Ill. 2d R. 615(a). "Essentially, the fairness of the trial must be undermined." *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901, 910 (1995). Defendants bear the burden of persuasion under each prong of the doctrine. *People v. Naylor*, 229 Ill. 2d 584, 593, 893 N.E.2d 653, 659 (2008). Where a defendant is unable to establish plain error, it is incumbent upon us to honor the procedural default. *Keene*, 169 Ill. 2d at 17, 660 N.E.2d at 910.

Necessarily, we must first determine whether an error actually occurred. *Lewis*, 234 Ill. 2d at 43, 912 N.E.2d at 1227, citing *People v. Walker*, 232 Ill. 2d 113, 124, 902 N.E.2d 691, 697 (2009). We, therefore, turn to the substance of each issue. *Walker*, 232 Ill. 2d at 125, 902 N.E.2d at 697; *Lewis*, 234 Ill. 2d at 43, 912 N.E.2d at 1227.

Defendant's first claim of error focuses upon what he perceives as a prejudicial comment

6

made by the prosecutor during the opening phase of the State's closing argument. While discussing accountability, the prosecutor told the jury that the law recognizes that sometimes criminals work together. According to defendant, in the absence of any evidence of any prior criminal record, the appellation served to "inflame the passions and prejudice of the jury" against him, and spoke to his propensity to commit crimes. The State counters that the comment evinced nothing more than a general explanation of the law of accountability.

In *People v. Nicholas*, our supreme court explained:

" 'The purpose of closing arguments is to give the parties a final opportunity to review with the jury the admitted evidence, discuss what it means, apply the applicable law to that evidence, and argue why the evidence and law compel a favorable verdict.' " *People v. Nicholas*, 218 Ill. 2d 104, 121, 842 N.E.2d 674, 685 (2005), quoting T. Mauet & W. Wolfson, Trial Evidence §14.1, at 439 (2d ed. 2001).

Accordingly, prosecutors are afforded wide latitude to comment on the relevant evidence as well as any fair and reasonable inferences therefrom. *Nicholas*, 218 Ill. 2d at 121, 842 N.E.2d at 685. "However, it is improper for the prosecutor to suggest that a defendant has been engaged in other criminal activity for which he is not on trial." *People v. Fleming*, 91 Ill. App. 3d 99, 109, 413 N.E.2d 1330, 1337 (1980). Reversible error may be found in a closing argument where the defendant can establish that but for the particular comment, the verdict would have been different. *People v. Leger*, 149 Ill. 2d 355, 399, 597 N.E.2d 586, 606 (1992). Where confronted with the legal question of whether a prosecutor's comments warrant the grant of a new trial, our review is *de novo*. *People v. Wheeler*, 226 Ill. 2d 92, 121, 871 N.E.2d 728, 744 (2007).

7

When reviewing comments made during closing arguments, we must consider the entirety of the argument, placing the complained-of comments in proper context. *Nicholas*, 218 Ill. 2d at 122, 842 N.E.2d at 685. Analytical hindsight demonstrates that statements made with no purpose other than to inflame the jury are improper and constitute error. *People v. Tiller*, 94 Ill. 2d 303, 321, 447 N.E.2d 174, 183 (1982). Yet, only those comments that cause substantial prejudice to the defendant will result in a reversal. *People v. Buss*, 187 Ill. 2d 144, 244, 718 N.E.2d 1, 55 (1999); see also *People v. Linscott*, 142 Ill. 2d 22, 28, 566 N.E.2d 1355, 1358 (1991).

We now consider the precise comment of the prosecutor complained of by defendant:

"Now, you may be wondering if it matters whose idea it was in the first place to go there and the shooting. Absolutely not. And that's because the law recognizes the concept of teamwork.

The law recognizes that sometimes criminals work together, and that it's easier for criminals sometimes to get a job done when there's two of them."

As a threshold matter, we must clarify that defendant's rendition of the prosecutor's comment is incomplete and lacking adequate context. At this point of her argument, the prosecutor was in the midst of discussing the facts adduced at trial and marshaling the law to be applied by the jury instructions. Her explanation continued beyond the portion complained of by defendant:

"And you're going to get an instruction on this, and the instruction is about accountability, and what the instruction reads is that, 'A person is legally responsible for the conduct of another person when, either before or during the commission of an offense and with the intent to promote or facilitate the commission of an offense he

8

knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense. The word conduct includes any criminal act done in furtherance of this planned and intended act.' "

The assistant State's Attorney then applied the law of accountability to defendant's case, without objection, eventually weaving it into the language of the jury instructions. After giving these comments proper context, we perceive no impropriety. They were clearly offered as a general explanation of the rationale behind the law of accountability and its application to the facts at bar. We discern nothing from the argument suggesting that generic use of the word "criminal" referred to defendant. Consequently, we find that this claim of error is without merit. Therefore, the plain-error doctrine is not applicable and the procedural default must be honored. *Keene*, 169 Ill. 2d at 17, 660 N.E.2d at 910.

Next, defendant maintains the State's rebuttal closing argument improperly shifted the burden of proof. Fundamental precedent dictates that it is reversible error for the State to attempt to shift the burden of proof to the defendant. *Leger*, 149 Ill. 2d at 399, 597 N.E.2d at 606. Nonetheless, during rebuttal, prosecutors are entitled to respond to comments made by the defendant "which clearly invite a response." *People v. Kliner*, 185 Ill. 2d 81, 154, 705 N.E.2d 850, 887 (1998). As with other aspects of argument, rebuttal must be considered in context with the other portions, including defendant's. *Kliner*, 185 Ill. 2d at 154, 705 N.E.2d at 887.

Accordingly, we have carefully reviewed the defendant's arguments and the State's response. Defendant's closing argument initially revisited a theme from his opening statement, namely that "this is probably a case that's beyond a television show." From there, the argument

addressed the believability of Gladys Torres' account of the day. Counsel first states, "And they want you to believe that, what is this, Snow White and Doc meet the drug dealers? This is preposterous." He then described her account as "starting to sound corny or preposterous." Likewise, Torres' claim that she would never forget the shooter's face was likewise deemed "ludicrous."

Additionally, the believability of Julio Avila's testimony was challenged on multiple fronts. Specifically, counsel questioned Avila's description of having sidestepped a bullet fired by defendant. Counsel then added, "He didn't sidestep any bullet. You want to believe that, then maybe I am the king of England, that you're sidestepping bullets." He then rhetorically posed the following, "What was [Avila] trying to be? A bullfighter with a gun? That doesn't play. He's a [liar]. Julio's coming in here lying through his teeth."

The argument then shifted to the conduct of the investigators. Defendant questioned police record keeping and challenged the manner in which defendant's statement was elicited. Specifically, defendant argued it was unbelievable that he confessed after he was given a Bible while he was in custody, in part because Detective Bella testified he had never seen something like that happen. Consequently, defendant asserted, "I can bet you they never handed him this Bible and he never gave it up." Defendant also criticized the fact that the statement was not memorialized in any way other than the notes and recollections of the investigators and the assistant State's Attorney. Likewise, defendant observed, "They allege they have an oral statement based on some sort of religious experience."

Given the nature and extent of the defendant's accusations, the prosecutor's responses

were clearly within the realm of invited comment:

"This defendant (indicating) gave a statement to the police. This defendant (indicating) chose how that statement should be memorialized. So how do you know that what he said was true? Well, Detective Bella got on the stand and told you what was said.

* * *

Look to the contents of this defendant's statement. If, in fact, he didn't say those things, then all this other evidence that corroborates it must have been manufactured, and you know that's not the case.

* * *

You heard from [Assistant State's Attorney] Iris Ferosie. Iris came in here and she told you what this defendant (indicating) said to her when she was at the police station that evening. Now, either he said those things or there's some grand conspiracy going on to put a case on for [defendant], and you know that's not the case, ladies and gentlemen. And how do you know that? Because you've got all this other evidence that corroborates what Iris Ferosie and Detective Bella told you he (indicating) said."

Defendant claims this "amounted to an accusation of a conspiracy" and encumbered him with the burden to show the "State's witnesses had conspired to frame him." Likewise, it "suggested to the jury that in order to acquit Ramos of the charged offenses, they must conclude that the State's witnesses had lied and conspired against him and *** that it was his burden to prove the frame

1-07-3244

up."

We disagree. The State's rebuttal closing was comprised significantly of responses to defendant's argument. Neither the portions quoted in the brief nor the complete argument demonstrates any impropriety. Instead, the State responded fairly to the defendant's accusations. See *Kliner*, 185 Ill. 2d at 154, 705 N.E.2d at 887; *People v. Evans*, 209 Ill. 2d 194, 225, 808 N.E.2d 939, 956 (2004) (prosecutor's provoked response in rebuttal cannot be basis for claim of a denial of a fair trial); *People v. Hall*, 194 Ill. 2d 305, 346, 743 N.E.2d 521, 545 (2000) (attack on thoroughness of investigation invited a response). Moreover, defendant's account of the argument is misleading.

Review of the omitted portions reveals additional support for the propriety of the State's argument. The gist of the remaining argument was that the aspects of the case challenged by defendant did not represent the entire universe of the evidence against him. Instead, there was additional evidence sufficient to convict defendant.

Defendant's interpretation of the prosecutor's comment about the manufacturing of evidence was likewise lacking its proper context. There, the prosecutor was directing the jury to the evidence corroborating the State's theory of the case and encouraging the jurors to use their common sense in evaluating the testimony and the evidence. See *Evans*, 209 Ill. 2d at 225, 808 N.E.2d at 956

We discern nothing from the State's argument that served to shift the burden to defendant to establish a conspiracy against him or show that witnesses lied. Instead, the prosecutor succinctly demonstrated why and how the State proved its case based on physical and testimonial

12

evidence. Furthermore, the comments were invited by the defense's closing argument that the State's witnesses could not and should not be believed. See *Hall*, 194 Ill. 2d at 346, 743 N.E.2d at 545. The argument never approached the position that defendant had to prove the State's witnesses were lying or had fabricated evidence in order for defendant to be acquitted. Consequently, we find no impropriety in any aspect of the State's initial and rebuttal closing arguments. Again, having found no error, we must honor the procedural default. See *Keene*, 169 Ill. 2d at 17, 660 N.E.2d at 910.

Next, defendant contends the trial court's remarks to the jury "conveyed to the jury that the State's burden of proof was merely a minor detail and, as such, they did not have to analyze the evidence very carefully in order to reach a verdict." Defendant points to the duration of the jury's deliberations as support for his argument that the trial judge's comments hastened the jury's verdict and denied him a fair trial. Here again, it is instructive to put the judge's statements in their proper context. The comments at issue here were made following the court's instructions on the law:

> "Ladies and gentlemen, I've been telling you repeatedly over the last three days not to talk about this case. That time is obviously now over. It's expected that you will talk to each other whatever length you feel is necessary to reach your verdicts.
>
> As I have told you before, I will tell you again, there are no time limits or expectations as to how much time this ought to take. You'll take whatever time you feel is necessary to reach your verdicts.

When you do go back to deliberate, you'll have in your possessions the instructions of law I've just recited to you. If you think it's helpful to review and peruse the law, it's available to you throughout. Whether you do so or how you do so will be up to you.

You will have also some exhibits which will go back as well. If you think it's helpful in your deliberations to review and peruse the exhibits, they will be available to you throughout the course of deliberations. Whether you use them or how you use them again will be up to you.

I will arrange with the deputy to have some food and drinks served to you. Whether you partake of that or not and how you work with your deliberations will be up to you. It's perfectly [*sic*] to eat and deliberate at the same time."

Mindful of the forfeiture considerations discussed herein, our earlier observations must be modified given the practical practical considerations of objecting to a judge's comments to the jury. See *People v. Sprinkle*, 27 Ill. 2d 398, 189 N.E.2d 295 (1963) (recognizing the practical difficulties of contemporaneous objections to a trial judge's conduct); *People v. Sims*, 192 Ill. 2d 592, 736 N.E.2d 1048 (2000) (same, relying on *Sprinkle* analysis). *Sprinkle* and *Sims* guide us that "we will not rigidly apply the waiver rule" under these circumstances. *People v. Woolley*, 205 Ill. 2d 296, 302, 793 N.E.2d 519, 522 (2002); *People v. Vaughn*, 354 Ill. App. 3d 917, 926, 821 N.E.2d 746, 754 (2004) (less rigid application of waiver rule for claims of potential judicial misconduct), citing *People v. Davis*, 185 Ill. 2d 317, 343, 706 N.E.2d 473, 485 (1998), and *People v. Williams*, 173 Ill. 2d 48, 85, 670 N.E.2d 638, 656 (1996). Therefore, we consider

14

1-07-3244

defendant's claim on its merits.

Generally, trial judges are afforded discretion in matters concerning jury management and a trial court's conduct on such issues are reviewed for abuses of discretion. *People v. Roberts*, 214 Ill. 2d 106, 121, 824 N.E.2d 250, 259 (2005). Yet, where an alleged error implicates defendant's right to a fair trial, the question is a legal one which we review *de novo*[4]. *Vaughn*, 354 Ill. App. 3d at 926, 821 N.E.2d at 754 (*de novo* review of claimed denial of right to testify); *People v. Stevens*, 338 Ill. App. 3d 806, 810, 790 N.E.2d 52, 55-56 (2003) (*de novo* review of claimed denial of right to give closing argument). Consequently, we review this claim *de novo*.

Unquestionably, "[t]he integrity of the jury's verdict must be protected from coercion, duress or influence." *People v. Patten*, 105 Ill. App. 3d 892, 894, 435 N.E.2d 171, 172 (1982). Yet, reversal is required only "when, taken in context and considering all the circumstances of the case, [the trial court's] supplemental instruction to a jury has the effect of coercing jurors into surrendering views conscientiously held." *People v. Gregory*, 184 Ill. App. 3d 676, 680-81, 540 N.E.2d 854, 857 (1989); *People v. Friedman*, 144 Ill. App. 3d 895, 904, 494 N.E.2d 760, 765 (1986) (verdict was "likely *** impermissibly hastened" coming five minutes after trial judge's remark about sequestration).

---

[4] Notably, the cases cited by defendant provide examples of situation where *de novo* review is appropriate (*Branson v. Department of Revenue*, 168 Ill. 2d 247, 254, 659 N.E.2d 951, 965 (1995) (statutory interpretation), and *People v. Saunders*, 288 Ill. App. 3d 523, 525, 680 N.E.2d 790, 791 (1997) (application of statutory privilege)), but do not illuminate the proper standard of review in the case *sub judice*.

15

1-07-3244

Having reviewed the transcript *in toto*, defendant's portrayal of the remarks is at best incomplete and at worst blatantly misleading. In considering this claim of error, the words penned by our supreme court long ago in *People v. Golub* clearly resonates:

"A verdict should express the deliberate judgment of the jury. The juror, as well as the judge, has an independent duty to perform, and he ought to be left free to pronounce his own conviction. A verdict hastened by the action of the judge, however worthy the motive, cannot be the result of that deliberation which the law guarantees. Remarks by a trial judge calculated to effect the rendition of a verdict without affording the jury an opportunity for careful consideration are unwarranted and often lead to great abuse. Whether the error is harmless or prejudicial depends upon the facts of the case. The trial judge's remarks of which plaintiff in error complains did not, either expressly or by implication, indicate that the jury should reach a particular conclusion." *People v. Golub*, 333 Ill. 554, 561, 165 N.E. 196, 199 (1929).

We are similarly guided by *People v. Chapman*, a more recent supreme court case addressing the timing of a *Prim* instruction. *People v. Chapman*, 194 Ill. 2d 186, 221-22, 743 N.E.2d 48, 70 (2000). In *Chapman*, the defendant claimed error based on the trial court's refusal to give a *Prim* instruction at the outset of the jury's deliberations. As described by the *Chapman* court:

"The *Prim* instruction informs the jury of the requirement that the verdict be unanimous; that the jury has a duty to deliberate; that jurors must impartially consider the evidence; and that jurors should not hesitate to reexamine their views and change their opinions if they believe them to be erroneous, provided the change is not solely

16

because of the opinion of fellow jurors or for the mere purpose of returning a verdict." *Chapman*, 194 Ill. 2d at 222, 743 N.E.2d at 70.

But for the unanimity and reexamination components, the words of the trial judge in the proceedings below are in harmony with the rationale of *Prim*. Notably, the *Chapman* court determined the giving of such an instruction was left to the trial court's discretion. *Chapman*, 194 Ill. 2d at 222, 743 N.E.2d at 70.

Having found no Illinois cases directly on point, and none cited by the parties, we find the rationale of *Chapman* applicable to the present case. Accordingly, we perceive that the touchstone for judging the court's comments below is to determine whether, based on the " 'totality of circumstances, the language used actually coerced or interfered with the deliberations of the jury to the prejudice of the defendant.' " *People v. Love*, 377 Ill. App. 3d 306, 316-17, 878 N.E.2d 789, 799 (2007), quoting *People v. Branch*, 123 Ill. App. 3d 245, 251, 462 N.E.2d 868, 873 (1984).

Viewed against the totality of the facts and circumstances, we are unable to perceive how the judge's commentary served to hasten the jury's deliberations, tended to minimize the State's burden, or encouraged superficial deliberations. Rather, they constituted practical guidance and a summary of the previously given instructions; effectively shorthand descriptions of what the jury would have during deliberations and the freedom to incorporate those items during the process. No fewer than three sentences were directed to the open-ended duration of deliberations. Additionally, the record reveals two instances, after the jury was selected where the trial judge, in responding to scheduling questions from the jurors, emphasized that the juries would have all the

17

time they needed to deliberate.

Specifically addressing the instructions on the law that would accompany the jury when they retired, the judge stated: "Whether you use them or how you use them again will be up to you." Defendant attaches particular significance to this comment. We do not perceive it to be of such moment. Rather, our experience instructs that this statement was reasonable and utterly understandable to this jury as it would have been to any jury. See *People v. Lozada*, 211 Ill. App. 3d 817, 822, 570 N.E.2d 737, 740 (1991) ("the test of the correctness of an instruction is not what meaning the ingenuity of counsel can attribute to it, but how and in what sense, under the evidence before them, ordinary persons acting as jurors will understand the instruction"). This appears little more than a recognition that, within the parameters of the instructions, the jury is free to deliberate in its own way.

Defendant points to the duration of the deliberations to support a hastening influence by the trial judge. Yet, one could just as reasonably conclude that the verdict was hastened by the significant and compelling evidence of defendant's guilt. We do not perceive it is our place to determine what is the proper duration of time for deliberations. Moreover, defendant's argument presents a logical fallacy of the *post hoc ergo propter hoc* variety we are not prepared to credit. In effect, defendant contends, because the deliberations were – in his view – short or hasty, they were hastened by the remarks of the trial judge. We disagree with the premise and the conclusion.

We find no error in the remarks of the trial court prior to deliberations. They were reasonable, commonsense guideposts for the jury. Not a single scintilla of influence or coercion is

1-07-3244

evident from the judge's words.  Consequently, we find no error.

For the foregoing reasons, we affirm defendant's conviction and sentence.  We likewise grant the State's motion for fees, in the amount of $150, for defending this appeal and for oral argument.

Affirmed.

FITZGERALD SMITH and HOWSE, JJ., concur.

1-07-3244

| Please Use Following Form: | |
|---|---|
| Complete TITLE of Case | THE PEOPLE OF THE STATE OF ILLINOIS, <br> Plaintiff-Appellee, <br><br> v. <br> ALFREDO RAMOS, <br><br> Defendant-Appellant. |
| Docket No. <br><br> COURT <br><br><br> Opinion Filed | No. 1-07-3244 <br> Appellate Court of Illinois <br> First District, FIFTH Division <br><br> December 4, 2009 <br> (Give month, day and year) |
| JUSTICES | JUSTICE TOOMIN delivered the opinion of the court: <br><br> FITZGERALD SMITH and HOWSE, JJ.      concur [s] <br><br> dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin: <br><br> The Honorable    James B. Linn, Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago. <br><br> For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel) <br><br> Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel.  Indicate the word NONE if not represented. <br><br> Attorneys for Plaintiff-Appellee-People of the State of Illinois:    Anita Alvarez <br> State's Attorney <br> County of Cook <br> Room 309-Richard J. Daley Center, <br> Chicago, IL  60602 <br><br> Of counsel: James E. Fitzgerald, Alan Spellberg, Sally Dilgart, Jackie Thursby-Elvekrog <br><br> Attorneys for Defendant-Appellant-Alfredo Ramos:    Michael J. Pelletier <br> State Appellate Defender <br><br> Patricia Unsinn <br> Deputy Defender |

20

Kari K. Firebaugh
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, IL 60601