# Illinois Official Reports

## Appellate Court

---

### *People v. Clark*, 2018 IL App (2d) 150608

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DENNIS CLARK, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-15-0608 |
| Filed | January 19, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-CF-1771; the Hon. Brian F. Telander, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Elena B. Penick, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Edward R. Psenicka, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Dennis Clark, appeals from his conviction in the circuit court of Du Page County of armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2012)). He contends that the trial court erred in admitting a prosecution witness's conviction of armed robbery with a firearm. Because the court did not abuse its discretion in admitting the conviction, we affirm.

¶ 2    <center>I. BACKGROUND</center>

¶ 3    On August 12, 2013, defendant and Christopher Nesbit robbed a Radio Shack store in Naperville. Because Nesbit used a gun, defendant was charged, under a theory of accountability, with armed robbery with a firearm. The sole issue at defendant's jury trial would be whether the gun that Nesbit used was a real firearm. Nesbit, who had pled guilty to the offense, would testify for the State.

¶ 4    Before trial, defendant moved to bar the State from using Nesbit's Cook County conviction of armed robbery with a firearm. The State responded that, because the Cook County conviction involved a firearm, it was relevant to show that Nesbit used a firearm in this case. The trial court noted that the conviction would not bolster Nesbit's credibility but ruled that it was admissible because it was relevant and more probative than prejudicial. However, the court prohibited the State from talking about the facts underlying the conviction.

¶ 5    There were two employees present during the robbery in this case: the store manager, Chirayash Patel, and a sales associate, Alexis Enter.

¶ 6    According to Patel, Nesbit and defendant entered the store. Shortly thereafter, Nesbit pulled a gun and pointed it at Patel. Patel described the gun as a handgun that looked real. He was familiar with BB guns, and it did not look like a BB gun. Patel was "scared to death." Patel admitted that he was not familiar with Airsoft-brand BB guns and that there could be BB guns that looked like real guns.

¶ 7    Enter described the gun as real and said that she was afraid of being shot or killed. Although she did not own a gun, she knew the difference between a BB gun and a real gun. She admitted that she did not know what an Airsoft BB gun is and could not tell the difference between a realistic BB gun and a real gun.

¶ 8    According to Nesbit, on the day of the robbery, he and defendant picked up a handgun to use in the robbery. Although someone gave the handgun to defendant, Nesbit carried it into the store because he wanted to be in control of the situation. Nesbit described the handgun as a black .380 semiautomatic. Nesbit, who had handled guns close to 100 times, considered the handgun to be real.

¶ 9    While Nesbit and defendant were fleeing the robbery in a car driven by a third person, Nesbit returned the handgun to defendant. Defendant, in turn, removed the bullets and pulled the trigger. Defendant told Nesbit that the trigger did not work. Nesbit could not remember what defendant did with the handgun.

¶ 10    During the ensuing police chase, the car crashed. All three occupants fled on foot, but Nesbit was captured near the accident scene.

¶ 11        Detective Richard Arsenault of the Naperville Police Department interviewed Nesbit at the accident scene. According to Detective Arsenault, Nesbit admitted to being involved in the robbery. Nesbit described the gun as a black .380-semiautomatic handgun. However, Nesbit added that the gun was fake. When Detective Arsenault asked if he meant fake like an Airsoft, Nesbit said yes. In subsequent conversations with Detective Arsenault, Nesbit never indicated that the gun was fake.

¶ 12        Later, Detective Arsenault spoke to defendant at the jail. When Detective Arsenault asked him who had the gun during the robbery, defendant told him that, before they entered the store, he had asked Nesbit who had the "ratchet" and Nesbit had answered that Nesbit had it. According to Detective Arsenault, "ratchet" is a street name for a gun. Detective Arsenault admitted that he never asked defendant if the gun was an Airsoft or whether Airsoft guns look real.

¶ 13        Detective Arsenault spoke again to Nesbit while Nesbit was being driven from Chicago to the Du Page County jail. During the ride, Nesbit agreed to give an audio-recorded statement. Nesbit told Detective Arsenault that, during the robbery, he used a loaded, black-handled, .380 handgun.

¶ 14        During closing argument, the prosecutor noted that the State must prove that defendant was accountable for the use of a real gun. The prosecutor argued that, because the robbers were professionals involved in a big-time operation, the gun was real.

¶ 15        The prosecutor pointed to Nesbit as someone who, because he had handled guns many times, recognized a real gun. The prosecutor added that, only days before this robbery, Nesbit had committed the "exact armed robbery at a different phone store with a real gun. And now he's going to downgrade and go to a toy gun? Are you kidding me? It's a joke." The trial court sustained defendant's objection to the prosecutor's comment.

¶ 16        The prosecutor also relied on the testimony of Patel, Enter, and Detective Arsenault regarding the gun. In doing so, the prosecutor pointed out that, in light of their testimony, plus defendant's admission to Detective Arsenault that he and Nesbit had used a gun, the jury did not need to believe Nesbit to find that a real gun was involved. The prosecutor acknowledged that Nesbit first told Detective Arsenault that the gun was an Airsoft, but he noted that Nesbit testified that it was real. He also pointed to Nesbit's subsequent statement to Detective Arsenault that the gun was real.

¶ 17        During rebuttal, the prosecutor noted that the only issue was whether Nesbit used a real gun. After referring to the testimony of Enter, Patel, Nesbit, and Detective Arsenault that the gun was real, the prosecutor argued that Nesbit's initial statement that the gun was fake was not believable. The prosecutor added that, four days before the robbery in this case, Nesbit committed a robbery with a gun. The trial court overruled defendant's objection.

¶ 18        After the jury found him guilty, defendant filed a motion for a new trial, contending, among other things, that the admission of Nesbit's armed-robbery conviction was improper. In denying the motion for a new trial, the trial court explained that Nesbit's armed-robbery conviction was relevant to the sole issue at trial and was more probative than prejudicial. Defendant, in turn, filed this timely appeal.

¶ 19                                        II. ANALYSIS

¶ 20        On appeal, defendant contends that the trial court erred in admitting Nesbit's conviction of armed robbery because a prior conviction may not be used to bolster a witness's credibility and the evidence was not relevant for any proper purpose.

¶ 21        The State responds that the trial court did not abuse its discretion in admitting Nesbit's conviction because (1) it was relevant to show that the gun in this case was real and (2) the probative value outweighed the prejudicial effect. Alternatively, the State posits that any error was harmless.

¶ 22        We begin with defendant's contention that we should review *de novo* the trial court's decision to admit Nesbit's conviction. We disagree.

¶ 23        Generally, evidentiary rulings are within the discretion of the trial court and will not be reversed unless the court abused its discretion. *People v. Purcell*, 364 Ill. App. 3d 283, 293 (2006). Acknowledging that evidentiary rulings are sometimes reviewed *de novo*, our supreme court has stated that such an exception to the general rule of deferential review applies only in a case where a trial court's exercise of its discretion has been frustrated by an erroneous legal ruling. *Purcell*, 364 Ill. App. 3d at 293 (citing *People v. Caffey*, 205 Ill. 2d 52, 89 (2001)).

¶ 24        Here, the trial court's evidentiary ruling was purely discretionary. The trial court was not called upon to make any legal ruling when deciding whether to admit Nesbit's conviction. Defendant's reliance on *People v. Ramos*, 396 Ill. App. 3d 869 (2009), is misplaced, as the court in that case reviewed *de novo* a trial court's comments to the jury that arguably impacted the defendant's right to a fair trial. *Ramos*, 396 Ill. App. 3d at 878-79. Here, the trial court ruled on a purely evidentiary issue. Thus, we apply the abuse-of-discretion standard.[1]

¶ 25        Turning to the merits, we initially note that Nesbit's prior conviction of armed robbery is not to be analyzed as "other crimes" evidence under Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011). That is so because Nesbit was not a defendant at trial. See *People v. Pikes*, 2013 IL 115171, ¶ 20. Accordingly, its admissibility is to be judged under ordinary principles of relevance. See *Pikes*, 2013 IL 115171, ¶ 20.

¶ 26        Evidence is admissible when it is relevant to an issue and its probative value is not substantially outweighed by its prejudicial effect. Ill. R. Evid. 403 (eff. Jan. 1, 2011); *People v. Gonzalez*, 142 Ill. 2d 481, 487 (1991). Evidence is relevant if it has any tendency to make the existence of any fact that is consequential to the determination of an action either more or less probable than it would be without the evidence. Ill. R. Evid. 401 (eff. Jan. 1, 2011); *People v. Morgan*, 197 Ill. 2d 404, 455-56 (2001). As noted, it is within the trial court's discretion whether evidence is relevant and admissible, and its decision will not be reversed absent an abuse of discretion. *Morgan*, 197 Ill. 2d at 455. A trial court abuses its discretion where its decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the court's view. *Morgan*, 197 Ill. 2d at 455.

¶ 27        In this case, because defendant conceded that he committed the robbery, the sole issue for the jury to decide was whether the gun used by Nesbit was real. Nesbit's conviction of a recent armed robbery with a firearm was relevant to that issue. The jury could reasonably

---

[1]We note that, even were we to review *de novo* the court's ruling, we would reach the same result.

infer that, because Nesbit recently had used a firearm in the Cook County case, he had used a firearm in this case. See *People v. Johnson*, 264 Ill. App. 3d 1000, 1009 (1994). Thus, the armed-robbery conviction was relevant to that issue.

¶ 28     Having concluded that the conviction was relevant, we next decide whether its probative value was substantially outweighed by its prejudicial effect. See Ill. R. Evid. 403 (eff. Jan. 1, 2011). It was not.

¶ 29     The armed-robbery conviction was not used to bolster Nesbit's credibility. Indeed, in ruling on the motion *in limine*, the trial court noted that the conviction would not bolster Nesbit's credibility. Moreover, in closing argument, the prosecutor referred to the conviction solely as proof that the gun was real. The prosecutor never contended that the conviction made Nesbit more credible. Rather, the prosecutor told the jury that it could find that the gun was real without believing Nesbit. Thus, the use of the armed-robbery conviction was limited to the issue of whether the gun was real.

¶ 30     Further, to the extent that the prosecutor referred to the conviction during closing argument, he did so only briefly. Indeed, after the prosecutor argued that, because Nesbit recently had used a real gun, he was likely to have done so in this case, the trial court sustained defendant's objection. The prosecutor focused instead on the evidence from Enter, Patel, and Detective Arsenault that the gun was real. Thus, the limited use of the conviction significantly reduced any prejudicial impact.

¶ 31     Because the State did not rely on the conviction to bolster Nesbit's credibility and relied primarily on the other evidence to prove that the gun was real, the prejudicial impact of the conviction did not substantially outweigh its probative value. Thus, the trial court did not abuse its discretion in admitting the armed-robbery conviction to show that the gun used in this case was real.

¶ 32     Although defendant relies on *People v. Sullivan*, 72 Ill. 2d 36 (1978), and *People v. Romero*, 66 Ill. 2d 325 (1977), neither case supports his position. *Sullivan* is distinguishable, as there the issue was whether the defendant was denied a fair and impartial trial when the prosecutor urged the jury to find the defendant guilty because his accomplices had pled guilty to the same offense. *Sullivan*, 72 Ill. 2d at 43. Here, the State did not rely on Nesbit's guilty plea to persuade the jury to find defendant guilty. *Romero* is also distinguishable, as the issue there was whether evidence of the defendants' other criminal acts was admissible to enhance the credibility of a prosecution witness. *Romero*, 66 Ill. 2d at 329. In this case, as noted, the State did not use the conviction to bolster Nesbit's credibility. Thus, neither *Sullivan* nor *Romero* supports defendant.

¶ 33     Even if the trial court abused its discretion in admitting Nesbit's armed-robbery conviction, any error was harmless. To establish that an error was harmless, the State must prove beyond a reasonable doubt that the verdict would have been the same absent the error. *People v. Montano*, 2017 IL App (2d) 140326, ¶ 124. When deciding whether an error was harmless, a reviewing court may (1) focus on the error to determine whether it might have contributed to the conviction, (2) examine the properly admitted evidence to determine whether it overwhelmingly supports the conviction, or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence. *Montano*, 2017 IL App (2d) 140326, ¶ 124.

¶ 34      Here, the evidence other than Nesbit's conviction overwhelmingly supported the jury's verdict. Most notably, defendant admitted to Detective Arsenault that a "ratchet," or gun, was used. Thus, defendant essentially admitted that the gun was real.

¶ 35      Further, Nesbit, who was very familiar with guns, testified that he used a real gun. Indeed, he described the gun in detail. He added that defendant emptied bullets from the gun during the getaway. Detective Arsenault testified that, although Nesbit initially told him that the gun was fake, Nesbit thereafter referred to the gun as real.

¶ 36      Finally, both Enter and Patel testified that the gun was real. Indeed, both witnesses testified that they were frightened because they thought that the gun was real. Both witnesses knew the difference between a BB gun and a real gun. Given that Nesbit described the gun as a .380, it was not likely that either witness confused it with a BB gun.

¶ 37      Given the overwhelming evidence that the gun was real, any error in admitting Nesbit's armed-robbery conviction was harmless.

¶ 38                       III. CONCLUSION

¶ 39      For the reasons stated, we affirm the judgment of the circuit court of Du Page County. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 40      Affirmed.