NOTICE

Decision filed 08/30/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210297-U

NO. 5-21-0297

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 19-CF-1546 |
| | ) | |
| RASHAUD PAUL, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Wharton and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   As there were no meritorious arguments that (1) defendant's right to a public trial was violated; (2) the trial court treated defendant differently from a State witness; (3) defendant was prejudiced by the prosecutor's comments including facts not in evidence; (4) the trial court erred by not allowing defendant to introduce evidence of an order of protection sought against the victim after the shooting; (5) defendant's conviction of two counts of aggravated discharge of a firearm was legally inconsistent with his acquittal of a third count; (6) defendant was proved guilty beyond a reasonable doubt; and (7) defense counsel was ineffective, we allow defendant's appointed counsel on appeal to withdraw and affirm the judgment of the trial court.

¶ 2    Following a jury trial, defendant, Rashaud Paul, was convicted of two counts of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2018)). He was found not guilty of one count of aggravated discharge and one count of aggravated battery with a firearm (*id.* § 12-3.05(e)(1))). Defendant appeals.

1

¶ 3 Defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit. Accordingly, OSAD has filed a motion to withdraw as counsel for the defendant (see *Anders v. California*, 386 U.S. 738 (1967)) along with a brief in support of the motion. OSAD has provided defendant with a copy of its *Anders* motion and brief. This court has provided him with ample opportunity to respond, but defendant has not done so. Having read OSAD's *Anders* motion and brief, and having examined the record on appeal, we agree that this appeal lacks merit. There is no potential ground for appeal. Accordingly, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 4                                      BACKGROUND

¶ 5 Defendant was charged with several offenses, including being an armed, habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2018)), following the shooting of Lamadre Ridley in the parking lot of Spike's Pub in Bellville. On defendant's motion, the trial court severed the AHC charge, and defendant was acquitted of that offense. The cause then proceeded to trial on the remaining charges.

¶ 6 Due to the ongoing pandemic, the trial court closed the courtroom to the general public but allowed spectators to watch the trial through a Zoom feed in the courthouse library. Evidence at the trial showed that, on September 25, 2019, Ridley walked from his home to Spike's, as was his custom on Tuesday evenings, intending to meet some friends.

¶ 7 Ridley testified that as he entered the back parking lot at Spike's, he recognized a friend, Greg Franklin. As he was walking toward Franklin, he was shot by a man in a white t-shirt. As the man continued shooting, Ridley took cover behind a truck and returned fire with a Glock pistol that he frequently carried. Ridley had never met defendant and denied having threatened him. Other witnesses, as well as video evidence, established that defendant was the shooter.

2

¶ 8 Defendant testified that he was dating Ridley's former girlfriend, Tacorie Purnell. Previously, Purnell had required a police escort when she went to Ridley's house to get her clothes.

¶ 9 Defendant said that Ridley had argued with and threatened him over the phone. On the night of the shooting, defendant was sitting in the back seat of a car with his friend, Jordan Jenkins. A car pulled up behind them and Purnell said that the occupants were "Ridley's people." Defendant took a gun from Jenkins's lap, put it in his pocket, and got out of the car. He was approached by five people who talked about sending the police to Ridley's house. Eventually, the five walked away.

¶ 10 Defendant then saw Ridley's cousin, Antwyne Warren, texting and acting suspiciously. Defendant became frightened and texted Purnell that he was ready to leave. Defendant then saw Ridley walking quickly in his direction. He knew that Ridley often carried a gun. As Ridley approached, his hand was reaching toward his pants. Defendant did not know "if he was pulling up his pants, holding his pants up or his hand was down like he was *** reaching for something," so defendant began shooting. Defendant testified that he was running backward as he shot.

¶ 11 The court allowed the State to present Warren's testimony from the first trial in which he identified defendant as the shooter. When cross-examining defendant, the prosecutor suggested that he had a gun the entire time he was at Spike's. The prosecutor showed defendant still photos appearing to show him with a gun sticking out of the waistband of his pants on his left side. Defendant responded that he did not have a gun and is right-handed.

¶ 12 In closing argument, the prosecutor stated that defendant

"tried to talk about but I'm right-handed. And I don't know if anybody is familiar with firearms, but you can be right-handed in writing and throwing and have to shoot with your left hand—I personally am that—if you're left-eye dominant. You got [*sic*] to have the

3

gun in your left hand to shoot even slightly accurately. So, please disregard that explaining away of those pictures the defendant did."

¶ 13    The jury found defendant guilty of two counts of aggravated discharge of a firearm. The trial court sentenced him to two concurrent terms of 16 years' imprisonment. Defendant timely appealed.

¶ 14                                    ANALYSIS

¶ 15    OSAD suggests seven possible issues that defendant could raise and concludes that none has even arguable merit. We agree.

¶ 16    OSAD first contends that defendant could not succeed on a claim that the trial court violated his right to a public trial by closing the courtroom to spectators, allowing the public to watch only on a Zoom feed.

¶ 17    A criminal defendant is guaranteed the right to a "speedy and public trial." U.S. Const., amend. VI. To that end, "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Presley v. Georgia*, 558 U.S. 209, 215 (2010).

> " '[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.' " *Id.* at 214 (quoting *Waller v. Georgia*, 467 U.S. 39, 48 (1984)).

¶ 18    Although no Illinois court has considered the issue, numerous state and federal courts have concluded that protecting public safety during the COVID pandemic is such an overriding interest and that the procedure adopted here—closing the courtroom to spectators while allowing the public to watch the trial *remotely*—is a reasonable accommodation. See, *e.g.*, *United States v. Richards*,

4

2020 WL 5219537 (M.D. Ala.), slip order at 2-4; *United States v. Huling*, 542 F. Supp. 3d 144, 145-48 (D.R.I. 2021). *Cf. United States v. Allen*, 34 F.4th 789, 798 & n.5 (9th Cir. 2022) (order closing courtroom and allowing public only audio access was overbroad given that "courts throughout the country" had successfully allowed video streaming of proceedings; citing cases).

¶ 19    Allowing public access via live video streaming is consistent with the public-trial requirement's purpose, to ensure a defendant " ' "that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." ' " *Huling*, 542 F. Supp. 3d at 147 (quoting *Waller*, 467 U.S. at 46, quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)). In light of the universal acceptance of video streaming as a means of accommodating defendants' interest in a public trial and the overriding need of protecting public health, there is no merit to an argument that the trial court's order violated defendant's right to a public trial.

¶ 20    OSAD next asserts that there is no arguable merit to a contention that the trial court erred by telling defendant to "sit" during his cross-examination. OSAD observes that the trial court, at the prosecution's request, allowed a State witness to leave the witness stand and approach a video screen while narrating a video. Later, during defendant's cross-examination, the court instructed him to sit while testifying about the video.

¶ 21    The trial judge, due to his or her great influence over the jury, should avoid displays of antagonism or favoritism toward either party. *People v. Johnson*, 2012 IL App (1st) 091730, ¶ 76. Here, while the court arguably treated defendant and the State witness differently, the circumstances were also different. The prosecutor specifically asked that the witness be allowed to stand. While cross-examining defendant, the prosecutor requested that defendant remain seated,

5

and defendant did not specifically ask to stand up. Any difference in treatment was minor and did not affect the jury's verdict.

¶ 22    OSAD's third potential issue is whether the prosecutor during closing argument improperly referred to facts not in evidence and used them to comment unfavorably on defendant's credibility. Noting that defense counsel did not object to the comments, OSAD concludes that they did not amount to plain error.

¶ 23    A prosecutor should not "argue assumptions or facts not based upon evidence in the case." *People v. Adams*, 2012 IL 111168, ¶ 17. Nevertheless, such comments are reversible error only if "there are reasonable grounds for believing the jury was prejudiced by the improper remarks." (Internal quotation marks omitted.) *People v. Wicks*, 236 Ill. App. 3d 97, 108 (1992).

¶ 24    As noted, defendant did not object to the prosecutor's remarks, thus forfeiting the issue. The plain-error doctrine permits a court of review to consider error that has been forfeited when either "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

¶ 25    Here, the evidence was not closely balanced, and the prosecutor's relatively brief reference to personal knowledge to contradict defendant's testimony was not sufficiently serious to "challenge[ ] the integrity of the judicial process." *Id.*

¶ 26    The fourth potential issue is whether the trial court erred in refusing to allow defendant to introduce the contents of a petition for an order of protection that Purnell filed against Ridley after the shooting. The court ruled that it was not relevant to show defendant's state of mind on the night of the shooting.

¶ 27    Evidence is admissible when it is relevant to an issue and its prejudicial effect does not substantially outweigh its prejudicial effect. Ill. R. Evid. 403 (eff. Jan. 1, 2011). Evidence is

relevant if it has any tendency to make the existence of any fact consequential to the outcome of a case either more or less probable than it would be without the evidence. *Id.* The trial court has discretion to decide whether evidence is relevant and admissible, and its decision will not be reversed absent an abuse of that discretion. *People v. Clark*, 2018 IL App (2d) 150608, ¶ 26.

¶ 28 Here, the trial court did not abuse its discretion in finding that a petition filed by another person after the shooting was irrelevant to defendant's mental state on the night of the incident. As OSAD points out, defendant was allowed to testify about threats that Ridley and his friends made against defendant and that on the night of the shooting Ridley walked aggressively toward him. Thus, defendant was allowed to present evidence that he feared Ridley when he shot him. Evidence of Ridley's violent conduct toward another individual after that time was not relevant to defendant's state of mind earlier.

¶ 29 The next potential issue is whether the convictions on two counts of aggravated discharge of a firearm were legally inconsistent with the acquittal on a third count of that offense. " 'Legally inconsistent verdicts occur when an essential element of each crime must, by the very nature of the verdicts, have been found to exist and to not exist even though the offenses arise out of the same set of facts.' " *People v. Price*, 221 Ill. 2d 182, 188 (2006) (quoting *People v. Frieberg*, 147 Ill. 2d 326, 343 (1992)). As OSAD notes, our supreme court has held that "defendants in Illinois can no longer challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges." *People v. Jones*, 207 Ill. 2d 122, 133-34 (2003). More importantly, the verdicts were not inconsistent where the charges in question were based on separate acts.

¶ 30 Defendant was charged with three counts of aggravated discharge of a firearm. To prove defendant guilty of that offense, the State had to prove that he knowingly or intentionally "[d]ischarge[d] a firearm in the direction of another person." 720 ILCS 5/24-1.2(a)(2) (West

7

2018); *People v. Leach*, 2011 IL App (1st) 090339, ¶ 22. In closing argument, the prosecutor explained that the three counts resulted from investigators finding three bullet holes in the back of Spike's Pub. She argued that only defendant was firing in that direction, which proved that defendant fired at least three shots.

¶ 31     Thus, the jury did not find the same mental state to exist and not exist with regard to a single act. The jury could have found that defendant had the requisite mental state with regard to two shots but not a third, or that one shot was justified by self-defense (as, for example, after Ridley returned fire) but two others were not.

¶ 32     The next potential issue is whether the State proved defendant guilty beyond a reasonable doubt. As noted, the State had to prove that defendant knowingly discharged a firearm in the direction of another. 720 ILCS 5/24-1.2(a)(2) (West 2018).

¶ 33     When a defendant challenges on appeal the sufficiency of the evidence to convict, we ask only whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004).

¶ 34     Defendant admitted that he shot Ridley but claimed that he did so in self-defense. To establish self-defense, a defendant must present some evidence that: (1) unlawful force was threatened against him, (2) he believed the danger of harm was imminent, (3) he was not the aggressor, (4) the force used was necessary to avert the danger, and (5) his beliefs were reasonable. *People v. Rodriguez*, 336 Ill. App. 3d 1, 15 (2002). Once a defendant offers some evidence of self-defense, the burden is upon the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. *Id.*

¶ 35    Here, Ridley testified that he was walking to meet a friend when, without provocation, an unknown man began shooting at him. Defendant admitted that he was the shooter. This was sufficient to prove that defendant shot Ridley and was not acting in self-defense. While defendant testified to a different version of the encounter, the jury, as factfinder, could choose which version to accept. *Id.*

¶ 36    The final potential issue is whether defense counsel was ineffective. OSAD notes that defense counsel did not file a motion to reconsider the sentence and failed to include potential double-jeopardy and jury-instruction issues in his motion for a new trial. However, OSAD concludes that no meritorious issues were forfeited as a result and, because defendant was not prejudiced, counsel was not ineffective.

¶ 37    A defendant establishes ineffective assistance of counsel by showing (1) his counsel's representation fell below an objective standard of reasonableness and (2) but for counsel's shortcomings, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not incompetence. *People v. Coleman*, 183 Ill. 2d 366, 397 (1998). Failing to file a motion to reconsider a sentence is not ineffective assistance unless some basis existed to file such a motion. *People v. Bailey*, 364 Ill. App. 3d 404, 408 (2006).

¶ 38    Here, there appear to be no meritorious issues that could have been raised. The court committed no obvious errors during sentencing, and the 16-year sentence appears to be appropriate given defendant's criminal record and that he was on parole for another conviction at the time of the offense.

¶ 39    OSAD also notes that two potential issues were not included in defense counsel's motion for a new trial.  After the armed habitual criminal charge was severed, defendant was acquitted of that offense.  Counsel moved to dismiss the remaining charges on double-jeopardy grounds.  The trial court denied the motion, finding that the charges contained different elements.  See generally *People v. Sienkiewicz*, 208 Ill. 2d 1, 6 (2003) (if each crime requires proof of a fact not required by the other, double jeopardy is not violated, notwithstanding a significant overlap in the proof offered to establish the crimes (citing *Blockburger v. United States*, 284 U.S. 299 (1932))).

¶ 40    The AHC count, as charged, required the State to prove that defendant possessed a firearm after having been convicted of two or more predicate offenses.  See 720 ILCS 5/24-1.7(a) (West 2018).  On the other hand, the aggravated discharge counts, as charged, required the State to prove that defendant "[d]ischarge[d] a firearm in the direction of another person."  *Id.* § 24-1.2(a)(2).  Because the aggravated-discharge counts required proof of different elements than the AHC charge, defendant's trial on those charges did not violate double jeopardy.  Accordingly, defendant was not prejudiced by counsel's failure to include the issue in his posttrial motion.

¶ 41    Counsel also did not include any issue regarding the court's instructing the jury about Warren's testimony.  Over defense objection, the court allowed the prosecutor to present Warren's testimony from the first trial by having an intern from the district attorney's office read it.  The court instructed the jury that it should "give this testimony the same consideration you would give it had the witness personally appeared in court."  See Illinois Pattern Jury Instructions, Civil, No. 2.01 (2011).  The trial court's decision to give a particular instruction is reviewed for an abuse of discretion.  *People v. Mohr*, 228 Ill. 2d 53, 66 (2008).  The instruction, while modified from the civil jury instructions, nevertheless accurately states the law.  Thus, the trial court did not abuse its

discretion in giving it, and defendant was not prejudiced by the failure to include the issue in the posttrial motion.

¶ 42                                CONCLUSION

¶ 43    For the foregoing reasons, we grant OSAD's *Anders* motion and affirm the judgment of the trial court.

¶ 44    Motion granted; judgment affirmed.