NOTICE

Decision filed 10/04/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190305-U

NO. 5-19-0305

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Edwards County. |
| | ) | |
| v. | ) | No. 18-CF-48 |
| | ) | |
| FREDDIE L. SWIFT JR., | ) | Honorable |
| | ) | Michael J. Valentine, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the defendant's conviction and sentence because the trial judge did not abuse his discretion when he allowed testimony, at the defendant's jury trial, about the fact that on the day the defendant was arrested for the offense of unlawful possession of a weapon by a felon, the defendant had an active warrant for his arrest for another offense. The trial judge's decision was narrowly tailored and supported by longstanding Illinois precedent.

¶ 2    The defendant, Freddie L. Swift Jr., appeals his conviction and sentence for the offense of unlawful possession of a weapon by a felon. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    On August 13, 2018, the defendant was charged by information with one count of unlawful possession of a weapon by a felon. The information alleged that on August 8, 2018, the defendant (1) had a previous felony conviction, from a 2012 Wabash County case, and (2) "knowingly possessed metal knuckles." Of relevance to the issue raised by the defendant in this appeal, on

1

May 10, 2019, the defendant filed a motion *in limine* in which the defendant asked the trial judge to bar the State from introducing evidence at the defendant's upcoming jury trial that, *inter alia*, "an arrest warrant had been issued for [the defendant] on August 8, 2018," on an aggravated assault charge out of White County. In the motion, the defendant argued that information about the warrant, the charge, and the defendant's subsequent conviction on the charge was not relevant to the unlawful possession of a weapon by a felon charge, and would be highly prejudicial if adduced in front of the jury at trial.

¶ 5    At a May 14, 2019, hearing on the motion, the defendant reiterated this argument, and noted that the defendant would be stipulating to the fact that he had a previous felony conviction, as that was an element of the present offense. The defendant posited that in light of his stipulation to a previous felony conviction, it would be highly prejudicial for the jury also to learn that there was an active warrant for the defendant's arrest at the time he was arrested for the present offense. The defendant contended that the fact was "not very probative of any issue in the case," because the defendant was in a public parking lot when arrested in this case, rather than on private property, and so, the defendant contended, there would not "be any question in the jury's mind of why the officer came to that location."

¶ 6    The State responded that it did not seek to elicit information about the nature of the warrant (that it was for aggravated assault), or about the fact that the defendant ultimately was convicted of that charge in separate proceedings. The State argued that it should, however, be allowed to adduce at trial the fact that a warrant existed, because that fact "was a necessary part of the [arresting officer's] narrative to give the jury an explanation of why the officer even made contact with [the defendant] in the first place." The State posited that without that fact, "there's going to be a gap in the narrative that I think would have a high probability of confusing the jurors when all they hear is 'Well, an officer just rolled up on him in the parking lot while he was in his

2

vehicle.' " The State asked to be allowed to have the officer testify that his reason for making contact with the defendant was to execute the arrest warrant, without going into "details about what the warrant was for or what ultimately happened in that case."

¶ 7    The trial judge stated that he believed the officer should be allowed to mention the warrant, so as to "present a narrative," because he presumed that if the officer had not known of the warrant, he would not have had the contact with the defendant that led to the present charge. He noted that although omitting the warrant would not force the officer to testify falsely, it would leave "holes" in the State's story as to why the officer interacted with the defendant. He ruled that there could be no mention of the "reason for the warrant" unless the defendant wished for there to be, and he expressly told the State, "I don't want *** any further inquiry into that warrant."

¶ 8    The following morning, May 15, 2019, testimony in the defendant's jury trial began. Prior to the questioning of witnesses, the State read to the jury the defendant's stipulation that on August 8, 2018, the defendant "had previously been convicted of a felony." The stipulation was admitted into evidence. The sole witness to testify at the trial was Deputy Sheriff Travis Roosevelt of the Edwards County Sheriff's Department, who testified for the State. Roosevelt testified that on August 8, 2018, while on duty, he observed the defendant's vehicle in the IGA parking lot in Albion. He got out of his vehicle and approached the defendant, who was in the driver's seat of the defendant's vehicle. Roosevelt testified that two children were in the back seat of the defendant's vehicle. He testified that he advised the defendant that the defendant "had a White County warrant" and asked the defendant if the children's mother was in the IGA. He testified that when the defendant subsequently opened the driver's side door of the defendant's vehicle, Roosevelt "observed metal knuckles in the storage compartment of the door." He testified that he was able to see the knuckles without moving anything, and without climbing into the defendant's vehicle at all. He testified that he took possession of the metal knuckles for safety reasons, and that

3

when he asked the defendant about the knuckles, the defendant told him that the defendant had forgotten the knuckles were there, and that the knuckles belonged to the defendant's brother. Roosevelt testified as to the chain of custody of the knuckles, identified the knuckles at trial, and testified that based upon his previous experience, he believed the knuckles were made of metal. He also testified that they were in the same condition as when he took possession of them from the defendant.

¶ 9    On cross-examination, Roosevelt testified that the defendant did not seem nervous to him, or as if he were hiding anything. Roosevelt agreed that although he had a body camera at the time, he did not activate it and did not video record the knuckles or any other contents of the vehicle. He agreed that the defendant was compliant, cooperative, and appeared to answer all of Roosevelt's questions fully. Roosevelt further agreed that he informed the defendant that the defendant was not being charged with any crime related to the knuckles "at that time."

¶ 10    On redirect examination, to respond to an issue raised by the defendant on cross-examination, Roosevelt was asked to clarify why in his police report he stated that he "later identified" the defendant. When asked, Roosevelt testified that the reason he approached the defendant on August 8, 2018, was "[t]o serve an active arrest warrant," and he agreed that he was familiar with the defendant at that time. He testified, "I identified him in the beginning, but 'later identified' is I'm just confirming it." Roosevelt testified that because of the limited battery life of his body camera, he did not activate it at all times during his shifts. He testified that it was his "common practice" to activate the body camera when serving arrest warrants, but that he forgot to do so on August 8, 2018.

¶ 11    Thereafter, outside the presence of the jury, the State rested, and the defendant made a motion for a directed verdict, which was denied. Subsequently, the State formally announced before the jury that it was resting its case, and the defendant announced the same. Following

4

closing arguments, the jury was instructed and began its deliberations. Approximately 36 minutes later, the jury returned with a verdict that found the defendant guilty of unlawful possession of a weapon by a felon.

¶ 12 On June 20, 2019, a sentencing hearing was held. Following the presentation of evidence, and argument, the trial judge sentenced the defendant to 7½ years of imprisonment in the Illinois Department of Corrections, followed by 2 years of mandatory supervised release. This timely appeal followed.

¶ 13                                                    II. ANALYSIS

¶ 14 On appeal, the defendant contends the trial judge abused his discretion when he allowed Roosevelt's trial testimony about the fact that on the day the defendant was arrested for the offense of unlawful possession of a weapon by a felon, the defendant had an active warrant for his arrest for another offense. The defendant argues that the elicited information "had no relevance to any of the disputed elements at trial, because [the defendant] was in a public place and Roosevelt did not need any pretext to approach or talk to him" and because the probative value of the elicited information "if any, was significantly outweighed by" the potential prejudice, in that the elicited information had a "tendency to prove conformity with previous bad actions." He acknowledges that the State did not argue that the information was necessary to prove an element of the charged offense, and instead argued that the information was necessary to prevent confusion among the jurors as to why Roosevelt approached the defendant, but contends that the State's argument did not give the jurors enough credit for being able to overlook a small gap in Roosevelt's narrative, and argues that, in any event, the trial judge could have avoided the problem simply by instructing the jury that the defendant was in a public place and that, therefore, Roosevelt had every right to approach and question the defendant.

5

¶ 15    With regard to prejudice to the defendant, he argues that "[w]hen a defendant is charged with being a felon in possession of a weapon and the State introduces evidence that the defendant had an active warrant out on the day of his arrest, the logical conclusion" the jurors would reach would be, in essence, that the defendant is an incorrigible criminal from whom society needs protection. The defendant further argues that this issue is preserved for appeal, and reiterates his concern that because of the elicited information, the jurors in his case were "too focused on alleged past criminality to accurately weigh the facts" related to the charged offense.

¶ 16    The State, on the other hand, first contends that the defendant has not properly preserved this issue, because it was not included in a posttrial motion, which is required even if an issue is raised in a motion *in limine* prior to trial. With regard to this contention, the State also notes that "[t]he defendant has not argued for first-prong plain error review and has, therefore, waived any argument that the evidence in this case was closely balanced." The State also argues that if this court considers the issue under the plain-error doctrine, this court should conclude that no error occurred, because the trial judge appropriately limited the elicited information to the fact that a warrant existed, without allowing information about the nature of the warrant or the case's disposition, which is in line with longstanding Illinois precedent. The State posits that if Roosevelt had "not been able to testify as to the existence of the warrant, the jury may well have looked with suspicion on *** Roosevelt for placing the defendant under arrest before even observing him commit an offense or seeing the metal knuckles in his possession." The State argues that this is "especially true since, during cross-examination *** Roosevelt agreed he informed the defendant he was not being charged 'at that time' for possessing the metal knuckles," which would leave the jurors wondering why the defendant was arrested, which, in turn, might lead them to call into question Roosevelt's competence, professionalism, and possible bias.

6

¶ 17    The State posits that the defendant's suggestion on appeal that the trial judge could have, essentially, instructed the jury that because the defendant was in a public parking lot, Roosevelt had every right to approach the defendant for a consensual conversation is problematic too. The State contends that "[i]n light of *** Roosevelt's testimony that he was not charging the defendant with the metal knuckles at the time he arrested him, the defendant's arrest then, at the conclusion of the proposed consensual encounter, would have been an unreasonable seizure of an innocent citizen," which further would have inflamed juror mistrust of Roosevelt. The State contends that "[t]he defendant fails to explain how, absent the mention of the outstanding warrant, a jury would *not* be confused about a consensual encounter that turned into a seizure of the defendant, as happened in this case, absent any criminal activity on the part of the defendant prior to the seizure." (Emphasis in original.)

¶ 18    Having advanced the reasons it believes the elicited information was relevant, the State acknowledges that the information still could "be excluded if its prejudicial effect substantially outweigh[ed] its probative value." The State argues that in this case, admission was proper, because "[n]othing about the mere existence of a warrant would cause the jury to convict the defendant on" an improper basis. The State notes that the jurors "heard from one witness—not multiple—that the defendant had one outstanding warrant—again, not multiple—on his arrest date," and that the jurors "did not hear the nature of the charge or that he was convicted of it." The State posits that the jurors might have believed "the warrant could have been for something relatively minor, such as a traffic offense." The State adds that there was no argument at trial that "the defendant was a bad person or habitual criminal prone to committing offenses," and that "[a]lthough the defendant speculates the jury may have concluded this, he provides no evidence to support this assertion."

7

¶ 19    Finally, the State argues that even if there was an abuse of discretion in this case, the defendant cannot show, as is required, that "he was unduly prejudiced by the error, as the evidence in this case was not close." In support of this argument, the State discusses the evidence adduced at trial, described in detail above. The State concludes that although "the existence of the outstanding warrant may have reflected negatively on the defendant, the defendant could not have been unduly prejudiced by such testimony in light of the strength of the State's case against him." The State also suggests that "[t]he alleged error in this case, if any exists, does not rise to the level of the errors in the cases where courts have found second-prong plain error warranted a reversal for a new trial." Accordingly, the State asks this court to affirm the defendant's conviction and sentence.

¶ 20    In his reply brief, the defendant contends the case could have proceeded at trial without any mention of the outstanding warrant, and suggests various testimonial scenarios on the part of Roosevelt that could have accomplished this goal. He notes that Roosevelt would not have been required to lie, although his proposals require that Roosevelt leave out many true elements of the events leading up to the defendant's arrest and curtail much of his narrative about how the present charge unfolded factually. The defendant reiterates his argument that "[a]voiding jury confusion is not a compelling reason to introduce other bad acts evidence when there are other ways to avoid this alleged confusion." He also argues that the State could have tried the case without ever mentioning the defendant's arrest on the current charge.

¶ 21    When presented with a situation potentially involving plain error, the first step for a reviewing court is to determine whether any error occurred at all. See, *e.g.*, *People v. Mueller*, 2015 IL App (5th) 130013, ¶ 23. "Rulings on evidentiary matters, including motions *in limine*, are within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." *People v. Morris*, 2013 IL App (1st) 110413, ¶ 47. A reviewing court will find an

abuse of discretion only "when the trial court's decision is arbitrary, fanciful, unreasonable, or when no reasonable person would take the same view as the trial court." *Id.* Even if a reviewing court finds that there has been an abuse of discretion, reversal is warranted only if "the record indicates the existence of substantial prejudice affecting the outcome of the trial." (Internal quotation marks omitted.) *People v. Jackson*, 232 Ill. 2d 246, 265 (2009).

¶ 22     As the State aptly notes—and as the defendant does not dispute, and does not to attempt to distinguish—this court has previously held that a trial judge "exercised proper discretion in permitting testimony regarding the existence of [a] warrant, while precluding testimony as to its nature, since it was relevant in describing the consequential steps taken in [a] police investigation." *People v. Goka*, 119 Ill. App. 3d 1024, 1030 (1983). We reasoned that "[e]vidence of prior crimes is admissible if it explains the circumstances surrounding [the] defendant's arrest and is part of a continuing narrative," and that a trial judge can "eliminate[ ] potential prejudice to [a] defendant by excluding testimony" as to the nature of the warrant, particularly where the warrant involves serious charges. *Id.*

¶ 23     We reiterated our holding and reasoning in *People v. Fauntleroy*, 224 Ill. App. 3d 140, 148-49 (1991). Therein, we ruled that there was no abuse of discretion by the trial judge because "the evidence relating to [the] defendant's arrest on an outstanding warrant was part of narrative testimony regarding the circumstances surrounding [the] defendant's arrest," and because "the nature of the underlying crime for which the warrant issued was not disclosed to the jury." *Id.* at 149. We added that, "[a]s our past cases show, this evidence was relevant to show the steps police took in their investigation, and the manner in which [the] defendant's custody began." *Id.* We reiterated the longstanding proposition that "[r]elevant evidence need not be excluded merely because of its prejudice to [a] defendant." *Id.*

¶ 24    We agree with the State that in light of our holdings in *Goka* and *Fauntleroy*, the trial judge in this case did not abuse his discretion when he allowed the State to adduce Roosevelt's testimony about the defendant's arrest warrant, because the trial judge's decision was not "arbitrary, fanciful, [or] unreasonable," and because there is absolutely no legal basis to claim that "no reasonable person would take the same view as the trial court" (*Morris*, 2013 IL App (1st) 110413, ¶ 47). The trial judge in this case carefully tailored his ruling, as did the judges in *Goka* and *Fauntleroy*, so that the nature of the defendant's warrant was never disclosed, and the trial judge in this case also ensured that no mention was made as to the disposition of the case for which the warrant issued. Moreover, the trial judge's determination that testimony about the existence of the warrant should be allowed as part of Roosevelt's continuing narrative about the events leading to the defendant's arrest was completely reasonable, as it was based upon existing and longstanding Illinois precedent. For this reason, and for the reasons argued by the State at trial and on appeal, described above, we agree with the State that the trial judge did not err when he determined that the elicited information was relevant in this case. We also agree with the State that the trial judge adequately eliminated the potential prejudice to the defendant by excluding testimony as to the nature of the warrant, and as to the disposition of the case for which the warrant was issued. Because the trial judge did not err in his determination that the evidence was relevant, and that its probative value was not substantially outweighed by its prejudicial effect (see, *e.g.*, *People v. Clark*, 2018 IL App (2d) 150608, ¶ 26), we decline to conclude that his ruling was "arbitrary, fanciful, [or] unreasonable," or that "no reasonable person would take the same view as the trial court" (*Morris*, 2013 IL App (1st) 110413, ¶ 47). Thus, no error occurred in this case, and there is no need to invoke a plain-error analysis. See, *e.g.*, *People v. Herron*, 215 Ill. 2d 167, 184 (2005) (before invoking plain-error doctrine, reviewing court must find that an error occurred).

¶ 25                           III. CONCLUSION

¶ 26    For the foregoing reasons, we affirm the defendant's conviction and sentence.


¶ 27    Affirmed.