THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARION VAUGHN, Defendant-Appellant.

First District (4th Division)   No. 1—03—1207

Opinion filed December 23, 2004.

QUINN, J., dissenting.

Michael J. Pelletier and Kristine A. Neal, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Veronica Bonilla-Lopez, and Heather Weiss, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Marion Vaughn appeals from jury trial convictions of driving under the influence of alcohol (DUI) and driving with a suspended license. Specifically, defendant argues that: (1) the trial judge's remarks denied him his constitutional right to testify thereby depriving him of a fair trial; (2) the trial court's imposition of $205 in total fines was in violation of section 5—9—1(d)(1) of the Unified Code of Corrections (the Code) (730 ILCS 5/5—9—1(d)(1) (West 2002)); and (3) he was denied a fair trial because the jury consisted of 13 persons. Defendant has withdrawn his argument regarding the number of jury members; therefore, we only address the issues of whether the trial judge's remarks denied defendant his constitutional right to a fair trial and whether the imposition of $205 in fines was in violation of section 5—9—1(d)(1) of the Code (730 ILCS 5/5—9—1(d)(1) (West 2002)). For the following reasons, we affirm in part, reverse in part, and remand for new trial.

On July 14, 2002, Chicago Heights police officer Keith Applequist pulled defendant over in the 1500 block of Halsted Street in Chicago Heights. Applequist placed defendant under arrest for driving under the influence of alcohol and driving on a suspended license.

At trial, defense counsel indicated in opening statements that defendant would testify on his own behalf. Specifically, counsel stated that defendant would testify that he swerved into the southbound lane of traffic to pass a police car which had pulled over another motorist, that he volunteered to perform field sobriety tests, that his car did not "bounce" off of the curb when he pulled over, that his request that Officer Applequist give him a "break" referred to arranging for a friend to pick up his car rather than have it towed, and that he truthfully answered all of Applequist's questions, including telling the officer that he had been drinking earlier and that he had just purchased cigarettes.

Officer Applequist, the only witness for the prosecution, testified that he observed defendant traveling northbound on Halsted when his vehicle erratically swerved into the southbound lanes, then back into the northbound lanes. Applequist signaled with his police lights for defendant to pull over. As he did so, his car "bounced" off the curb.

Applequist then approached the car and observed that defendant appeared intoxicated. Defendant's eyes were bloodshot and watery, and defendant appeared unsteady as he was swaying back and forth while seated in the car. Defendant also smelled of alcohol and slurred his speech. When Applequist asked defendant if he had been drinking, defendant replied affirmatively. Applequist then asked to see defendant's driver's license. Defendant responded that he did not have it with him.

Officer Applequist asked defendant to exit the car so he could perform field sobriety tests. Defendant complied but stumbled as he exited the car. Applequist supported defendant because he was unsteady and swaying. Defendant attempted to take the field sobriety tests, but could not complete them because he was unable to stand on his own.

Officer Applequist placed defendant under arrest for DUI and transported him to the police station. Applequist assisted defendant into the squad car so he would not fall over. Once at the police station, Applequist attempted to administer a Breathalyzer test. However, defendant could not complete the test because he was unable to stand properly and had been burping, which likely would have led to an inaccurate reading.

A background check revealed that defendant had an outstanding warrant and a suspended driver's license. Throughout the incident defendant repeatedly asked Applequist, "Can you give me a break?" Applequist was not sure what defendant meant by the request.

On cross-examination, Officer Applequist stated that he did not remember if there was another police car in the area. He reiterated that defendant's vehicle, which was traveling northbound, erratically swerved into the southbound lanes. Although defendant agreed to perform field sobriety tests, he could not complete them because he was "unable to safely perform any physical motor skills."

Following Officer Applequist's testimony, the parties stipulated that defendant's driving abstract indicated that his license had been suspended at the time of his arrest.

Defendant testified that in the early hours of July 14, 2002, he went to a store to purchase cigarettes. Upon leaving the store, he noticed a police car had pulled over another motorist. He drove around these cars by moving into the southbound lane. When he saw a police car behind him signaling to pull over, he did so without hitting the curb. Defendant stated that Officer Applequist asked him for his license and proof of insurance. Defendant replied that his license was suspended.

At that point, the trial judge halted defense counsel's questioning

of defendant. During a sidebar held in chambers, the following exchange occurred:

"Q. [The Court:] Mr. Vaughn, you can have a seat. Now, we're in chambers outside of the presence of the Jury. Obviously, the Defendant is now testifying that he has committed a crime. And, Mr. Vaughn, I want to first of all ask you a few questions. Your attorney discussed a trial strategy with you, is that true?

A. [Defendant:] Pardon?

Q. Your attorney, they talked about what you were going to testify to today, is that right?

A. Yes, sir.

Q. And, Mr. Vaughn, you understand that one of the charges that you're facing is driving on a suspended license, correct?

A. Yes, I know that.

Q. Okay. And that's a Class A misdemeanor. And you have just stepped forward and pretty much admitted to that courtroom, you said that you were driving. That you knew your license was suspended. That's essentially admitting to driving on a suspended license.

A. On a suspended license, yes.

Q. You had a discussion with your Attorneys about your testimony, is that right?

A. Yes.

Q. And you understand that by saying this, you're pretty much assuring yourself that you're going to be found guilty of this offense. You understand that, right?

A. What, of driving on a suspended—

Q. Yes, sir.

A. Yes.

Q. You understand that it's highly probable that a jury is going to find you guilty of that offense. You understand that, right?

A. Yes, I understand that.

Q. Now, I'm trying to get you to understand. You had a discussion with your Attorneys about your testimony, is that right?

A. Yes, sir.

Q. And did you have a discussion about your testimony?

A. Yes, but I also told them that I—as far as the suspended license case goes, that I was going to probably be found guilty of that.

Q. Okay. And you discussed strategy with your Attorneys about your understanding you have a right not to testify. You understand that don't you?

A. Yes, sir.

Q. And you understand that I have mentioned, as you heard, when I was—when this Jury was being selected, that you had an absolute right to not offer any testimony at all. You understand that, right?

A. Yes, sir.

Q. And you heard me tell the Jury that, right?

A. Yes, sir.

Q. Okay. Now, you have two choises [*sic*], now. You can continue in your testimony, understanding—and I know that you understand that the Jury has a high probability of finding you guilty of driving on a suspended license. You can continue in your testimony or you can step down from the witness stand right now with your testimony up to this point in time would be stricken. The Jury would be told to disregard it, okay? You understand what I'm telling you?

A. Yes, sir.

Q. Do you wish to talk to your Attorney for a second?

A. Yes, sir. May I?

Q. Okay."

Defendant then consulted with counsel before returning to the courtroom.

Outside the presence of the jury, the trial judge then advised defendant of his fifth and sixth amendment rights to counsel and against self-incrimination. The following exchange then occurred:

"Q. [The Court:] Okay. Now, after speaking with your attorney and understanding the ramifications of what you're doing, is it still your intention to continue to testify or do you wish your testimony to be stricken and to step down from the witness stand?

A. [Defendant:] Strike it and maybe let me go on. I don't know what's going to happen.

Q. So, you don't want to testify?

A. No, no."

The jurors then returned to the courtroom and the trial judge advised them that defendant had chosen not to testify and that they were to disregard his prior testimony. Defendant rested and moved for a directed finding, alleging that the prosecution had failed to meet its burden. The trial court denied the motion.

Following a conference regarding jury instructions, defense counsel moved for a mistrial and had the following exchange with the trial judge:

"Q. [The Court:] *** Counsel you said you had a motion?

A. [Defense Counsel:] Yes, your Honor. We would make a motion for a mistrial at this time. In light of what has happened, we don't believe that although you admonished the Jury to ignore what they heard and strike it from their memory, I don't think it's possible. I don't think it's possible to expect the Jury to ignore what they have heard. Our opening argument, all of our cross examination of the Officer, all of our preparation up to now was based on trial

strategy, which not just on today's Court date, not just on last week, but for the last several months had gone over with Mr. Vaughn. Had mapped out with Mr. Vaughn. Had explored with Mr. Vaughn. Mr. Vaughn, even said in chambers on the record as to what he expected, and what—he knew what happened, had made a conscious decision as to how we would proceed. We don't believe at this point that it's possible for the case to proceed and for him to receive a fair, in essence, trial at this point, given the light that in the mist [sic] of proceeding, in the mist [sic] of our case, the strategy was changed not necessarily by us. So we have some concern with that. It also created problems as far as closing arguments because our whole strategy now would have been changed. We're not prepared for closing arguments at this point, given the light of how things have changed. We don't believe that we should be forced to proceed. We ask for a mistrial.

Q. Well, let's do a couple things. First of all, number one, your client made it readily apparent that he had discussed trial strategy with you. That's readily apparent. And, obviously, during the course of his testimony, he changed his mind. So, it is the Defendant that has placed himself in this position. Now, some people might argue that now you have the best of both worlds. Yes, it may be very hard for this Jury to put this out of their mind, but they have heard your client testify without cross examination. And so, therefore, you may in fact very well reap some benefits out of this. And I don't believe that it's proper to grant a mistrial based on the Defendant's behavior because what would prevent him from doing this in the future?

A. Your Honor, but we would argue that our client didn't necessarily step up and say in the middle of his testimony that I want—I no longer want to testify. I believe that there was some confusion as to the argument that was presented. When we spoke with him in the back we did go over trial strategy and he was understanding. And then upon receiving Miranda rights, he was somewhat confused, and then something was different.

Q. Are you telling me that your client is confused and now wants to testify? Is that what you're telling me?

A. Well, your Honor, we think at this point that Jury has been so tampered—

Q. That's not what I'm asking you. Are you telling me that your client now wishes to testify?

A. But, your Honor, if we put him on at this point—

Q. I'm not saying I'm going to allow it. That's not what I'm saying. I'm asking you a pretty straightforward question, you know. Because you're suggesting something, and I don't want there to be a suggestion. I want there to be clarity. Are you telling me that your client now wants to testify?

A. I—my client would prefer to testify, although when he went in chambers, he only went in with the understanding—because of the Miranda warnings he would think—even having him testify at this point, we don't believe would undo what has been done.

Q. Your motion is respectfully denied."

After closing arguments, the jury found defendant guilty of DUI and driving on a suspended license.

The trial court sentenced defendant to 30 days in the Cook County department of corrections, time considered served, two years' conditional discharge, attendance at one victim impact panel and five days in the Sheriff's Work Alternative Program, and assessed him $205 in fines pursuant to section 11—501(j) of the Illinois Vehicle Code (625 ILCS 5/11—501(j) (West 2002)) and sections 5—9—1(c—5) and 5—9—1(c—7) (730 ILCS 5/5—9—1(c—5), (c—7) (West 2002)) of the Code. At the time of sentencing, defendant was unemployed and in the process of filing for disability benefits. Defendant filed a timely notice of appeal.

■ Defendant initially contends that he was denied his constitutional right to testify because of the trial judge's remarks. The State responds that this issue was waived. In order to preserve an issue for purposes of appeal, a party must make an objection at trial and file a written posttrial motion raising the issue. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, a less rigid standard of the waiver rule applies when the issue involves potential misconduct by a trial judge. *People v. Davis*, 185 Ill. 2d 317, 343 (1998); *People v. Williams*, 173 Ill. 2d 48, 85 (1996).

Here, defendant did not specifically object to the comments of the trial judge at the time they occurred. However, prior to closing arguments, defendant moved for a mistrial on the grounds that the jury was unlikely to disregard defendant's stricken testimony and that his trial strategy was based upon testifying on his own behalf. Defense counsel stated that after the trial judge read defendant his *Miranda* rights, defendant became confused and said he did not want to testify, even though he and his counsel had decided that he would. This motion for a mistrial suffices as an objection to the issue at trial. Moreover, defendant raised the issue in a motion for a new trial. Finally, defendant's argument is based on alleged misconduct by the trial judge. Therefore, we will consider its merits.

■ Based on the fourteenth amendment right to due process (*People v. Sowewimo*, 276 Ill. App. 3d 330, 338 (1995), citing *Rock v. Arkansas*, 483 U.S. 44, 51-53, 97 L. Ed. 2d 37, 46-47, 107 S. Ct. 2704, 2708-10 (1987)), a criminal defendant has the right to testify or to refuse to testify in his own defense (*Harris v. New York*, 401 U.S. 222, 225, 28

L. Ed. 2d 1, 4, 91 S. Ct. 643, 645 (1971)). Illinois courts have long held that when a defendant is represented by counsel, the trial court does not have a duty to tell a defendant of his right to testify. *People v. Smith*, 176 Ill. 2d 217, 234 (1997). Rather, it is the defense counsel's responsibility to advise a defendant about his right to testify and to explain any advantages or disadvantages of invoking that right. *People v. Shelton*, 252 Ill. App. 3d 193, 202 (1993), citing *United States v. Goodwin*, 770 F.2d 631, 637 (7th Cir. 1985). However, the ultimate decision of whether to testify is made by the defendant. *Smith*, 176 Ill. 2d at 335-36.

■ When a defendant is represented by counsel, it is left to the discretion of the trial court whether to inform the defendant of the right against self-incrimination. *People v. Blalock*, 239 Ill. App. 3d 830, 836 (1993). If a trial court chooses to advise a witness of his rights, the trial judge " ' "must walk the fine line between, on the one hand, fully advising the witness of the danger of self-incrimination and the right not to testify, and, on the other hand, threatening the witness to an extent which materially impairs the defendant's due process right to present witnesses in his defense." ' [Citations.]" *People v. Morley*, 255 Ill. App. 3d 589, 597 (1994).

A defendant is deprived of his due process right to a fair trial if the trial judge's admonitions cause the defendant not to testify and are improper, thereby prejudicing the outcome of the trial. *People v. King*, 154 Ill. 2d 217, 224 (1993), citing *Webb v. Texas*, 409 U.S. 95, 98, 34 L. Ed. 2d 330, 333, 93 S. Ct. 351, 353 (1972). In other words, even if the remarks are improper and cause the defendant not to testify, a defendant is not deprived of his due process right to a fair trial unless it affects the outcome of the trial. *King*, 154 Ill. 2d at 225.

To determine whether a trial judge's improper admonitions affected the outcome of a trial, an offer of proof as to what the testimony would have been is relevant. *People v. Johnson*, 262 Ill. App. 3d 781, 795 (1994), citing *Blalock*, 239 Ill. App. 3d at 838. Whether there are additional witnesses is relevant to determine prejudice. *King*, 154 Ill. 2d at 225. For instance, a defendant suffers greater harm if his sole witness is improperly prevented from testifying. *King*, 154 Ill. 2d at 225-26.

The specific facts and circumstances of the case must be considered to determine whether the admonitions are improper. *King*, 154 Ill. 2d at 225. For example, the United States Supreme Court found a trial judge's admonitions were improper where the trial judge threatened the witness with an indictment for perjury that would adversely affect the sentence the witness had already been serving. *Webb*, 409 U.S. at 97-98, 34 L. Ed. 2d at 333, 93 S. Ct. at 353. A trial judge's remarks are

also improper if the judge editorializes that it would be "foolish" for a witness to testify. *Blalock*, 239 Ill. App. 3d at 836. Moreover, a trial judge's admonitions are improper if they are based on mistaken facts of a plea bargain that may cause the witness not to testify for fear that the plea bargain would be revoked. *King*, 154 Ill. 2d at 225. A trial judge's admonitions are also improper if they are excessive, such as where a judge informs a witness of his right not to testify on more than six occasions even though the witness indicated on more than three occasions that he wished to testify. *People v. Radovick*, 275 Ill. App. 3d 809, 816 (1995). Finally, a trial judge's admonitions are improper if they indicate the judge is no longer acting in the role of neutral decision maker. *Morley*, 255 Ill. App. 3d at 600. For instance, when a trial judge predicts the outcome of a case based on witness's decision to testify, the trial judge has overstepped the bounds of neutral decision maker and his comments are improper. See *Morley*, 255 Ill. App. 3d at 600.

On the other hand, a trial judge's remarks are proper if they are made outside the presence of the jury (*People v. Young*, 231 Ill. App. 3d 40, 43 (1992)), if they are neutral, and if the judge gives the witness additional time to decide whether to testify as well as to consult with counsel (*Sowewimo*, 276 Ill. App. 3d at 339; *People v. Johnson*, 262 Ill. App. 3d 781, 795 (1994)). Because this is a question of law, we review this allegation *de novo. People v. Jennings*, 296 Ill. App. 3d 761, 764 (1998).

■ Here, the trial judge's remarks most certainly caused defendant to decide not to testify. As evidenced when he began his testimony, defendant was prepared to testify prior to his sidebar conversation with the trial judge. Defendant stated that he did not want to testify after the conversation with the trial judge and further consultation with counsel.

Although the trial judge's intentions may have been to ensure that defendant understood his right to choose whether to testify, the trial judge ceased to act as a neutral decision maker and resumed the role of a trial strategist. The judge's remarks are similar to those by the trial judge in *Morley*. In *Morley*, the judge's remarks were improper because the judge had departed from his role as neutral decision maker by predicting the outcome of a witness's decision to testify. *Morley*, 255 Ill. App. 3d at 600. Here, the trial judge predicted that if defendant continued to testify, it was "highly probable that a jury is going to find [him] guilty" of driving on a suspended license. The fact that defendant conferred with counsel following the sidebar and that the conversation took place outside the jury's presence does not negate the fact that the judge stepped over the line in his role as neutral deci-

sion maker. We cannot underestimate the impact and effect of the judge's suggestions as to whether defendant should testify. Consequently, we conclude that the trial judge's remarks were inappropriate.

Next, we address whether the judge's remarks also prejudiced the outcome of the case. Regarding the count of driving on a suspended license, the trial judge's remarks did not affect the verdict. Officer Applequist testified that he observed defendant driving his vehicle and that the background check revealed that defendant's license had been suspended at the time of his arrest. Moreover, the parties stipulated to the fact that defendant's driving abstract showed that his license had been suspended at the time of the arrest. Further, defense counsel's offer of proof on the content of defendant's testimony does not rebut the evidence that he was driving on a suspended license. Finally, the record shows that it was defense counsel's strategy to have defendant admit to driving on a suspended license. Therefore, we conclude that although the trial judge's comments were inappropriate and caused defendant not to testify, they did not affect the verdict regarding driving on a suspended license. Accordingly, we affirm defendant's conviction on that count.

Conversely, we find that the trial judge's remarks did affect the verdict regarding the DUI count. Unlike the count of driving on a suspended license, where the record reveals that defendant's testimony would not have affected the guilty finding, we do not know what defendant would have testified to regarding the DUI charge. Defendant's failure to complete field sobriety tests and to take a Breathalyzer test is not determinative of a guilty finding on the DUI count. Further, because defendant was the only witness for his defense, he suffered greater harm than he would have had he presented others. Therefore, we cannot conclude that the failure of defendant to testify did not affect the verdict or the jury's guilty finding. Accordingly, defendant is entitled to a new trial regarding the DUI count.

Because we reverse defendant's conviction for DUI, we need not address his contentions concerning the $205 in fines imposed as a penalty for that charge.

For the reasons set forth above, we affirm defendant's conviction for driving on a suspended license, reverse his conviction for DUI and remand for new trial on that count.

Affirmed in part and reversed in part; cause remanded for a new trial on the issue of driving under the influence of alcohol.

REID, P.J., concurs.

JUSTICE QUINN, dissenting:

I dissent. The majority opinion completely fails to address the well-established rule of law in Illinois that a defense counsel may not concede his client's guilt, after a plea of not guilty has been entered, "unless the record adequately shows that defendant knowingly and intelligently consented to his counsel's strategy." *People v. Hattery*, 109 Ill. 2d 449, 465 (1985).

In *Hattery*, the defendant was charged with the murders of a woman and her two young children. The defendant chose to have a jury trial. In opening argument, defense counsel conceded that defendant had murdered the three victims and was therefore guilty of murder and also eligible for imposition of the death penalty. The defense strategy was to assert a "defense" of compulsion which could be considered as a factor in mitigation at the death sentence hearing. The supreme court reversed the defendant's murder convictions and death sentence. In doing so, the court held:

> " 'Unquestionably, the constitutional right of a criminal defendant to plead "not guilty" \*\*\* entails the obligation of his attorney to structure the trial of the case around his client's plea. \*\*\* In those rare cases where counsel advises his client that the latter's guilt should be admitted, the client's knowing consent to such trial strategy must appear outside the presence of the jury on the trial record in the manner consistent with *Boykin* [*v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969)]." *People v. Hattery*, 109 Ill. 2d at 463, quoting *Wiley v. Sowders*, 647 F.2d 642, 650 (6th Cir. 1981).

Our supreme court recently relied on the holding in *Hattery* in *People v. Morris*, 209 Ill. 2d 137 (2004). In *Morris*, the defendant testified regarding the circumstances of the murder of the victim of a vehicular hijacking. The supreme court pointed out that the defendant's testimony established his guilt based on accountability. Consequently, the supreme court reversed the defendant's convictions of first degree murder, kidnaping, and aggravated vehicular hijacking and remanded the matter for a new trial.

In *People v. Dodson*, 331 Ill. App. 3d 187, 195 (2002), the appellate court reversed a defendant's conviction for armed robbery where defense counsel stipulated to the evidence in a bench trial. This evidence included the fact that the weapon used by the defendant was an unloaded pellet gun. The appellate court held that the stipulation was tantamount to a guilty plea and that the record did not demonstrate that the defendant knowingly and intelligently waived his rights under Supreme Court Rule 402 (177 Ill. 2d R. 402).

The majority assert: "When a defendant is represented by counsel,

it is left to the discretion of the trial court whether to inform the defendant of the right against self-incrimination. *People v. Blalock*, 239 Ill. App. 3d 830, 836 (1993)." 354 Ill. App. 3d at 925. Actually, *Blalock*'s holding posited this as the standard to apply when a *witness* is going to testify. Knox, the witness in *Blalock*, was a codefendant of the defendant on trial. This distinction is significant. *Blalock*'s jury could not convict Knox no matter how incriminating his testimony was. As the instant case involved the defendant's own testimony before his jury, the holdings in *Hattery* and its progeny apply.

Commensurate with the holdings in *Hattery* and *Morris*, the trial court's actions in the instant case were *required*. While these actions certainly did interfere with the attorney/client relationship between defendant and defense counsel, this was the result of applying well-settled legal precedent and not the result of the trial judge meddling in matters not of his concern. This fact would explain why defense counsel did not contemporaneously object to the trial court's admonishments. While the charges in the instant case alleged the defendant was driving under the influence and while his license was suspended, these are both Class A misdemeanors, subjecting the defendant to the same punishment.

Further, the majority say that "an offer of proof as to what the testimony would have been is relevant. *People v. Johnson*, 262 Ill. App. 3d 781, 795 (1994)." 354 Ill. App. 3d at 925. The actual wording in *Johnson* is "even if the admonitions were improper, in the absence of any offer of proof as to what his testimony would have been, defendant is unable to demonstrate any prejudice as a result of [the witness's] failure to testify." *People v. Johnson*, 262 Ill. App. 3d at 795. The majority appear to concede the lack of prejudice when they say "we do not know what defendant would have testified to regarding the DUI charge." 354 Ill. App. 3d at 927.

As the majority explain, "a trial judge's remarks are proper if they are made outside the presence of the jury [citation], if they are neutral, and if the judge gives the witness additional time to decide whether to testify as well as to consult with counsel [citations]." 354 Ill. App. 3d at 926. The trial judge complied with all of these requirements. The majority assert that "the trial judge ceased to act as a neutral decision maker and resumed the role of a trial strategist. The judge's remarks are similar to those by the trial judge in *Morley*." 354 Ill. App. 3d at 926. In *Morley*, the defendant called a codefendant as a witness in his trial. After talking to the codefendant on the record, the trial judge entered a room where the codefendant's attorneys were talking to their client. The trial judge told the codefendant "that he 'had a shot' in his case if he did not testify at defendant's trial and that if

[codefendant] 'testified in this case, there would be two convictions, instead of one.' " *People v. Morley*, 255 Ill. App. 3d at 595. The error in relying on *Morley* is the same error made in relying on *Blalock*. While it may be error for a trial judge to tell a codefendant that he will be convicted in his trial if he testifies for his codefendant, it is not error to advise a defendant who confesses his guilt while testifying in his own trial that he is likely to be convicted. Indeed, *Hattery* and *Morris* compel the judge to so advise the defendant.

Based on the above reasons, I would affirm.