# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00283-CR

**James Douglas Jones, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 421ST DISTRICT COURT OF CALDWELL COUNTY
### NO. 21-257, THE HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## DISSENTING OPINION

## TO DENIAL OF EN BANC CONSIDERATION

Appellant James Douglas Jones waived his right to testify at his trial. On appeal, Jones argues that the district court coerced him into doing so and that, consequently, his waiver was involuntary. Because this is an issue of first impression in this Court that raises important questions of constitutional law, I have moved for en banc consideration. *See* Tex. R. App. P. 41.2(c); *Chakrabarty v. Ganguly*, 573 S.W.3d 413, 415–16 & n.4 (Tex. App.—Dallas 2019, no pet.) ("The standard set forth in Rule 41 is sufficiently broad to afford the Court the discretion to consider a case en banc 'if the circumstances require and the court votes to do so.'" (quoting *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 708 n.1 (Tex. 2003)). Three of the six justices of this Court have concluded that the district court's actions did not rise to the level of coercion and that en banc consideration is not warranted here. Because I conclude otherwise, I dissent.

"The right to defend is personal" to the defendant, *Faretta v. California*, 422 U.S. 806, 834 (1975), "and a defendant's choice in exercising that right must be honored out of that respect for the individual which is the lifeblood of the law," *McCoy v. Louisiana*, 584 U.S. 414, 421 (2018) (cleaned up). The right to defend oneself against criminal charges encompasses not only the right to self-representation, *see Faretta*, 422 U.S. at 834, but also the right "to testify in one's own behalf," *McCoy*, 584 U.S at 422. As the Supreme Court has explained, "Even more fundamental to a personal defense than the right of self-representation . . . is an accused's right to present his own version of events in his own words. A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." *Rock v. Arkansas*, 483 U.S. 44, 52 (1987). "In fact, the most important witness for the defense in many criminal cases is the defendant himself." *Id.* Thus, a criminal defendant's right to testify at trial is considered "fundamental" and implicates several constitutional rights: the right to be heard under the Due Process Clause of the Fourteenth Amendment, the right to call witnesses in his favor under the Compulsory Process Clause of the Sixth Amendment, the right to personally make a defense under the Sixth Amendment, and the right to choose whether or not to remain silent under the Fifth Amendment. *See Johnson v. State*, 169 S.W.3d 223, 236 (Tex. Crim. App. 2005) (citing *Rock*, 483 U.S. at 51-53).

Trial courts violate a defendant's right to present a defense when they admonish a defense witness in a manner that "exert[s] such duress on the witness'[s] mind as to preclude him from making a free and voluntary choice whether or not to testify." *Webb v. Texas*, 409 U.S. 95, 98 (1972). This prohibition against coercion applies to "judicial behavior aimed at dissuading the defendant himself—not merely his witnesses—from testifying." *United States v. Davis*, 974 F.2d 182, 187 (D.C. Cir. 1992). Coercion may occur when a trial court goes beyond

2

"warning the witness of his right to refuse to testify and of the necessity to tell the truth" and proceeds to explain the risks of testifying using "unnecessarily strong terms" or make "threatening remarks" to the witness. *Webb*, 409 U.S. at 97-98. In determining whether a trial court's comments rose to the level of coercion and "effectively drove that witness off the stand," *id.*, reviewing courts examine the record for evidence of "judicial intimidation, threat, or overbearance," *U.S. v. Webber*, 208 F.3d 545, 553 (6th Cir. 2000). Other indicators of coercion include "the trial court interject[ing] itself without apparent cause into the role of counsel," *Arthur v. United States*, 986 A.2d 398, 409–12 (D.C. 2009), the trial court discussing its extensive legal experience, *F.C.L. v. Agustin*, 350 P.3d 482, 488 (Or. Ct. App. 2015), the trial court reciting "mistaken facts" about the case, *People v. Vaughn*, 821 N.E.2d 746, 754 (Ill. App. Ct. 2004), and "excessive" admonitions repeatedly informing a witness of his right not to testify, *id.* We review a trial court's admonitions to a defense witness for abuse of discretion. *See United States v. Arthur*, 949 F.2d 211, 215–16 (6th Circ. 1991).

On this record, I would conclude that the district court's comments to Jones regarding his right to testify crossed the line into coercion and constituted an abuse of discretion. After trial counsel informed the district court that Jones, against counsel's advice, was "leaning toward testifying," the district court immediately proceeded to advise Jones against doing so. The district court warned Jones that if he testified, his "prior criminal history gets to become relevant to the jury because they get to decide—they get to know that you've been convicted of felonies. . . . Because that goes to impeach your credibility as a witness." The district court added that the court has "been doing this almost 46 years" and has "been around a lot of courthouses." The court then advised Jones, "Most lawyers whose clients have felony convictions tell their clients not to testify. . . . It's not beneficial to you, Mr. Jones, for that jury

3

to know [that] you have—you have charges where you were convicted of assaulting police officers." Jones disputed this, informing the court that he was "found not guilty." The court responded that in "one of them," Jones was found guilty, but Jones maintained that he was found not guilty "in all three of them." The court then pointed out that Jones had "other convictions that are—where I think you were convicted of assaultive offenses," specifically a conviction for retaliation, which the district court characterized as "assault behavior." The court warned Jones, "The jury is not going to find favor with that." The court then told Jones that it was "trying to look out for" Jones's "best interest . . . to some degree although that's not my job. That's [counsel's] job to do that." The court added, "But when that jury sees these—these other things, they're not going to find favor. And if they see you being disrespectful to the law—."

The court did not stop there, but continued onto a different reason why it believed Jones should not testify—Jones's temper: "And the chances too, when you get on the witness stand . . . you may have a hard time controlling your temper. And . . . if your temper comes out during the course of your testimony . . . that's probably not going to be well perceived by the jury either." The court then admonished Jones,

> So you need to think about all of those things over the lunch hour. And nobody here is trying to railroad you and make you do anything. People are trying to give you pretty good advice. Whether you take it, you know, at the end of the day . . . . [Y]our . . . attorney doesn't go to prison. I don't go to prison. You're the one that can get convicted if you alienate the jury. They're the ones you've asked to sentence you. So they're the ones that can send you to the penitentiary for a long, long time. . . . So how you behave and what they perceive of you, I mean I just— I can't—I can't give you any more information than that, Mr. Jones. You've got to decide. And I've told you, I'll let you override your lawyer if you want to. I'm protecting him so that he can't later be charged with being ineffective . . . as your lawyer. He's warning you not to do this. The Court is kind of giving you some advice which may not be my appropriate role, but I am doing the same thing. And you can decide whether you're going to get up on that witness stand and

subject yourself to that cross-examination about your prior criminal history. And I don't suggest that's a good thing for you to do. You get to do it though. . . . You get to make that decision.

The court again reminded Jones, "I've been doing this a long time." Jones responded that he understood, and the court concluded, "And I can say, I can only tell you what I've told you. You get to make that decision. So think about it over the lunch hour and we'll come back."

After lunch, the district court asked Jones if he had thought about "whether you're going to get on that witness stand and subject yourself—." Before the court could finish its question, Jones told the court that he had "thought about it" and that he "want[ed] to wait until all the evidence is in." The court responded, "Okay. That's fine. We'll do that. Well, just keep pondering on it, Mr. Jones."

Later that day, Jones informed the court that he had decided not to testify. In accepting Jones's decision, the court acknowledged that Jones "has been counselled by his attorney and with conversations with the Court that are already on the record." After confirming that Jones had "discussed this thoroughly with [his] attorney" and placing Jones under oath, the following occurred:

| [The Court]: | So you now have quite a few hours to think about the issue of whether you want to get on the witness stand and testify and be cross-examined about your prior criminal history. So is it your decision that you are not going to—you decided to assert your Fifth Amendment or your privilege not to testify? |
|---|---|
| [The Defendant]: | Yes. |
| [The Court]: | Okay. And you've done that—you believe your attorney has counseled you adequately on that basis? |

5

[The Defendant]:     On that basis, yes.

[The Court]:     And me, too, basically, Mr. Jones?

[The Defendant]:     Yes, sir.

[The Court]:     I've kind of warned you about doing that. So you decided of your own free will that you think that's in your best interest not to testify and have all those prior convictions be placed before the jury; is that correct?

[The Defendant]:     That's correct.

In my view, the above clearly demonstrates that the district court went well beyond "warning the witness of his right to refuse to testify and of the necessity to tell the truth." The district court, by its own admission, advised Jones not to testify and acknowledged that this "may not be [its] appropriate role." The court actively sought to persuade Jones not to testify by referring repeatedly to Jones's prior convictions and how the jury "would not find favor" with him because of those convictions.[1] The court also mentioned Jones's "temper" and how "that's probably not going to be well perceived by the jury either." The court also referred repeatedly to its experience, telling Jones that it has "been doing this almost 46 years," has "been around a lot of courthouses," and has "been doing this a long time." The court warned Jones that if he "alienated" the jury, Jones was "the one that can get convicted" and be sent "to the penitentiary for a long, long time" based on "how you behave and what they perceive of you." Although the

---

[1] As Jones notes in his brief, it is unclear whether Jones's convictions, many of which were older than ten years, would have been admissible. See Tex. R. Evid. 609(b) (providing that evidence of conviction older than 10 years is admissible "only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect"). Jones's retaliation conviction, for example, was from 2004, and that appears to be his most recent conviction. Others were from the 1980s and 1990s.

6

court told Jones that it was his decision whether to testify, it couched that admonishment in terms of "subject[ing] [him]self to that cross-examination about [his] prior criminal history." The court added, "I don't suggest that's a good thing for you to do."

Before the district court's comments, Jones was "leaning toward testifying." After the court's comments, Jones decided not to testify, and he acknowledged that his decision was based not only on the advice that he received from counsel but also on the "counsel" that he received from the court. On this record, I conclude that the district court's comments, considered in their totality, "exerted such duress on [Jones's] mind as to preclude him from making a free and voluntary choice whether or not to testify." *See Webb*, 409 U.S. at 98.

Finally, I agree with Jones that the denial of the right to conduct one's own defense, including the right to testify, is "structural error" that is not subject to a harm analysis. *See McCoy*, 584 U.S. at 422, 427; *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017). Accordingly, based on this error alone, Jones is entitled to reversal of his conviction. *See McCoy*, 584 U.S. at 427-28; *see also Jones v. State*, No. 09-20-00121-CR, 2021 WL 3743836, at *1 (Tex. App.—Beaumont Aug. 25, 2021, no pet.) (mem. op., not designated for publication).

For these reasons, I would conclude on en banc consideration that Jones's waiver of his right to testify was involuntary and would reverse Jones's conviction for that reason and remand the case for a new trial. Because the Court does not, I dissent.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Baker, Triana, Kelly, Smith, and Theofanis

Filed: May 31, 2024

Do Not Publish