2024 IL App (1st) 231877-U

No. 1-23-1877

Order filed June 26, 2024

THIRD DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| IN THE INTEREST OF R.W., a minor | ) | |
| | ) | |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | No. 22 JD 01971 |
| | ) | |
| v. | ) | Honorable |
| | ) | Daryl Jones, |
| R.W., | ) | Judge, Presiding. |
| | ) | |
| Respondent-Appellant.) | ) | |

JUSTICE D.B. WALKER delivered the judgment of the court.
Justices Lampkin and Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held:* The pertinent aggravated unlawful use of a weapon and unlawful possession of a firearm statutes are constitutional, the evidence presented against respondent was sufficient to uphold his conviction, and the judge's admonishment was not in error. We affirm the circuit court's order.

¶ 2    After a bench trial, juvenile respondent R.W. was adjudicated delinquent on two charges of aggravated unlawful use of a weapon (AUUW) based on his possession of a firearm while

being under the age of 21 and his possession of a firearm without a valid Firearm Owner's Identification (FOID) Card. He was also adjudicated delinquent on one charge of unlawful possession of a firearm (UPF) based on his possession of a concealable firearm while under the age of 18. On appeal, he argues (1) that the statutes under which he was convicted are unconstitutional, (2) that the circuit court erred when it denied his motion for a directed finding of not guilty, (3) that the evidence presented at trial was insufficient to sustain his conviction, and (4) that the judge improperly admonished him of his right to testify on his own behalf.

¶ 3                                    I. BACKGROUND

¶ 4        Officer Audrey Webb of the Chicago Police Department testified that, on December 11, 2022, he was on patrol, riding in the rear passenger seat of an unmarked police car. At around 4:00 p.m., Officer Webb saw respondent walking down the street with a bulge in the center pocket of his hoodie. Officer Webb stated that his previous experience indicated that such a bulge often indicated that an individual was attempting to conceal a weapon. Officer Webb made eye contact with respondent, who "quickly put his hands in his hoodie pocket [in] what we thought [was] an attempt to conceal a bulge."

¶ 5        Officer Webb exited the vehicle and instructed respondent to approach him. Respondent appeared reluctant to approach and pulled out "a bag of some sort of chips." Officer Webb asked him where he was going and felt the front of his hoodie. Although the hoodie felt empty, respondent "bladed his stance away from [Officer Webb]" at that moment. Officer Webb explained that "blading his stance" meant respondent turning his body to obstruct the officer's view of one side of his body. After blading his stance, respondent fled on foot down the street and Officer Webb pursued on foot under the belief that he was concealing an illegal

firearm. At no point during the ensuing 30 second chase did the officer lose sight of respondent. As respondent fled, Officer Webb saw him pull a black object from his waistband and throw it toward a car parked along the street. About two to five seconds later, the officer found and recovered a black Glock handgun with a blue handle where the black object had been tossed. He abandoned the chase and lost sight of respondent while he recovered the weapon, but "heard commotion through an open gate" nearby. Upon investigating the commotion, he found his partner, Officer Alvarez, apprehending respondent, whom he recognized because he was wearing the same clothes he had been wearing moments before. The events leading up to respondent's arrest were captured on Officer Webb's body-worn camera as well and that video was admitted as evidence.

¶ 6     Officer Webb testified that respondent had stated at some point during their interaction that he was 17 years old. The following testimony was given regarding the question of whether respondent possessed a FOID Card:

> "PROSECUTION: In processing the minor, did you learn whether or not he had a valid FOID or CCL Card?
>
> OFFICER WEBB: Yes. And also due to him being 17 years old, he was unable to obtain a CCL and a FOID.
>
> PROSECUTION: Okay."

¶ 7     After Officer Webb's testimony, the State rested and respondent moved for a directed finding of not guilty, asserting that the State had not presented sufficient evidence to establish that he did not have a valid FOID Card. The circuit court responded that, "[i]n viewing the evidence in the light most favorable to the State, which I'm required to do at this time point, I am going to deny the motion."

¶ 8        After a brief pause following the court's ruling on the motion, the following exchange occurred:

"DEFENSE COUNSEL: Judge – Judge, I talked to the minor earlier today, you know, about his right to testify. That it was his right to remain silent. That is, you know, solely his choice that only he can decide.

And now I believe it's my understanding that he does not want to testify. Is that correct that you don't want to get up and talk?

(Discussion off the record.)

COURT: All right. And that's right. [Respondent], this is your decision. You have your attorney here that's here to represent you, but this is the decision that you get to make so you have the right to testify, and you have the right not to testify. You understand that? You're nodding your head yes.

RESPONDENT: I would like to testify to my innocence.

COURT: You would like to testify? Okay.

DEFENSE COUNSEL: You want to get up and talk?

COURT: So the minor said that he would like to testify.

DEFENSE COUNSEL: Okay. Your Honor, we call [respondent]."

¶ 9        Respondent testified that he lived on the street where he was arrested and had gone to the store, where he had purchased a bag of chips. He was returning home when a police officer spoke to him. He showed the bag of chips to the officer. He ran from the officer because he was scared for his life and did not know what was about to happen. Respondent tried to run home to his parent and was apprehended on the porch of his home. He denied throwing a

weapon onto the ground, that he ever had a weapon, and that he had ever seen the weapon that had allegedly been in his possession.

¶ 10       On cross-examination, when asked why he was afraid for his life, respondent stated that he very much did not like being touched and did not want the officer to touch him. He had already shown the officer what the bulge was and was free to run if he so desired. Respondent stated that Officer Webb grabbed him firmly with both hands, but admitted that the body-worn camera footage showed the officer only using one hand. Respondent stated that "the video been looking different" and "could be edited like." Respondent expressed concern that, since the police car was unmarked, its stopping could have indicated that someone was going to shoot from inside the vehicle. The entirety of the questioning of respondent regarding issuance and possession of a FOID Card was as follows:

"PROSECUTION: Do you have a valid FOID Card?

RESPONDENT: No."

¶ 11       The circuit court adjudicated respondent delinquent on all three counts and sentenced him to six months of probation. Respondent timely appealed and this appeal follows.

¶ 12                                    II. ANALYSIS

¶ 13       Respondent argues (1) that the statutes under which he was convicted are unconstitutional, (2) that the circuit court erred when it denied his motion for a directed finding of not guilty, (3) that the evidence presented at trial was insufficient to sustain his conviction, and (4) that the judge improperly admonished him of his right to testify on his own behalf.

¶ 14                                    A. Constitutionality

¶ 15        Respondent asserts that the precedent established by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022), rendered several statutory provisions unconstitutional, both facially and as applied to him. Specifically sections 24-1.6(a)(3)(C) and 24-1.6(a)(3)(I) of the Criminal Code of 1961, which are part of the larger AUUW statute; the former section prohibits carrying a firearm without a FOID card and the latter prohibits possession of a handgun by a person under 21 years of age except where "the person under 21 is engaged in lawful activities under the Wildlife Code." 720 ILCS 5/24-1.6(a)(3)(C) (West 2022), 720 ILCS 5/24-1.6(a)(3)(I). Respondent also challenges the post-*Bruen* constitutionality of section 24-3.1(a)(1) of the Criminal Code of 1961, which defines the offense of unlawful possession of firearms and firearm ammunition and prohibits possession of "any firearm of a size which may be concealed upon the person" by an individual under 18 years of age. 720 ILCS 5/24-3.1(a)(1) (West 2022).

¶ 16        "Statutes are presumed constitutional, and to rebut that presumption, the party challenging a statute's constitutionality has the burden of establishing a clear violation." *People v. Bochenek*, 2021 IL 125889, ¶ 10. "The distinction between facial and as-applied constitutional challenges is critical." *People v. Harris*, 2018 IL 121932, ¶ 38. "A party raising a facial challenge must establish that the statute is unconstitutional under any possible set of facts, while an as-applied challenge requires a showing that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party." *Id*. "If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so." *Bochenek*, 2021 IL 125889, ¶ 10.

¶ 17    The State argues that because respondent did not raise his as-applied challenge before the circuit court and therefore the circuit court did not hold an evidentiary hearing on the constitutional question, the argument is forfeited on appeal. Respondent, predicting this argument, asserts that the factual record is sufficiently developed and no evidentiary hearing was necessary. *Harris*, by reference to *Holman*, supports respondent's argument, because just as in *Holman*, the key findings of fact, in this case whether respondent was under the ages of 21 and 18, and whether he possessed a firearm, were sufficiently established in the circuit court. *Harris*, 2018 IL 121932, ¶44 (citing *People v. Holman*, 2017 IL 120655 (abrogated on other grounds by *People v. Wilson*, 2023 IL 127666)). A facial challenge, on the other hand, may be raised at any time, regardless of whether a posttrial motion was filed. *People v. McCarty*, 223 Ill. 2d 109, 122-23 (2006).

¶ 18    The second amendment of the U.S. Constitution reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

¶ 19    Respondent's contention, that the fact that *Bruen* "rejected means-end scrutiny in favor of an exclusively historical approach" renders the relevant statutes unconstitutional, relies on premises that have already been sufficiently addressed in this court. This court has previously addressed the validity of the FOID card requirement, finding that *Bruen* explicitly condoned background checks, which are the cornerstone of the FOID act, and, indeed, only found unconstitutional New York's "proper cause" requirement. *People v. Gunn*, 2023 IL App (1st) 221032, ¶ 19. Accordingly, respondent's challenge to the more general requirement that a firearm carrier be issued a valid FOID card fails as well. The remainder of respondent's constitutional challenges are addressed by this court's holding in *People v. Hatcher*, 2024 IL

App (1st) 220455, and we see no need to repeat it at great length here. As we held in *Hatcher*, our supreme court has already twice found that there is sufficient historical precedent to establish that individuals under the age of 21 are outside the scope of the Second Amendment. *Id*, ¶ 58 (citing *In re Jordan G.*, 2015 IL 116834, ¶ 25 and *People v. Mosley*, 2015 IL 115872, ¶ 38). We believe that the history supporting our supreme court's findings in those cases has not changed in the intervening years. Although *Hatcher* did not address the UPF statute, its logic equally applies, as it is also an age-based restriction on individuals who fall outside the scope of the Second Amendment. Accordingly, respondent's facial challenge fails and, as no set of facts can establish the unconstitutionality of the statute, neither can respondent's particular circumstances in his as-applied challenge.. As such, we find that the statutes under which respondent was charged are constitutional, both facially and as applied to him.

¶ 20                                    B. Motion for Directed Finding

Respondent argues that the circuit court erred by denying respondent's motion for a directed finding. The motion in question was filed at the close of the State's evidence and asserted that the State had not presented competent evidence that respondent did not have a valid FOID card at the time of the alleged offense. Respondent acknowledges that he failed to renew his motion at the close of both parties' evidence, as required. *People v. Barrow*, 133 Ill. 2d 226, 249 (1989). Respondent asks that we nonetheless review the alleged error under the plain-error doctrine, or else that we review the failure to renew the motion as ineffective assistance of counsel.

¶ 21        Under the plain-error doctrine, a "narrow and limited exception" can allow for review of an otherwise-forfeited claim where the appellant can demonstrate plain error. *People v.*

*Hillier*, 237 Ill. 2d 539, 545 (2010). The first hurdle that an appellant must surmount to establish plain error is to "show that a clear or obvious error occurred." *Id.* The first prong that must be satisfied to demonstrate that trial counsel was ineffective is to show that one's "attorney's actions constituted errors so serious as to fall below an objective standard of reasonableness." *People v. Colon*, 225 Ill. 2d 125, 135 (2007).

¶ 22        A motion for a directed finding asserts that "as a matter of law, the evidence is insufficient to support a finding or finding of guilty." *People v. Lawson*, 2015 IL App (2d) 140604, ¶ 17. "[S]uch a motion asks whether the State's evidence could support a finding of guilty beyond a reasonable doubt, not whether the evidence does in fact support that finding." *Id*. As the question presented to us is one of law, our standard of review is *de novo*. *People v. Cazacu*, 373 Ill. App. 3d 465, 473 (2007).

¶ 23        Here, the question before us is whether the evidence was sufficient to support a factual finding that respondent had not been issued a FOID card that was valid at the time of the offense. 720 ILCS 5/24-1.6(a)(3)(C) (West 2022). At the time the motion for a directed finding was made, the sum of the evidence to that end was the following testimony from the officer who processed respondent upon his arrest:

> "STATE: In processing the minor, did you learn whether or not he had a valid FOID or CCL card?
>
> OFFICER WEBB: Yes. And also due to him being 17 years old, he was unable to obtain a CCL and a FOID.
>
> STATE: Okay."

¶ 24        Respondent asserts that the statement from Officer Webb is an incorrect legal conclusion as to respondent's eligibility for FOID and CCL cards at the time of the offense. While that is

one valid interpretation of the statement, the statement could also be interpreted in other ways. One could interpret the affirmative answer to mean that he was able to confirm whether or not he had been issued a card and the statement that followed, even if it was in fact an incorrect legal conclusion, to clearly suggest that respondent had not been issued a valid FOID card. Alternatively, one could interpret the affirmative answer to mean that he was able to determine whether he had been issued a card and the statement that followed to mean that he had *in fact* been unsuccessful in obtaining a FOID card due to his age and an implied lack of consent from his parents. As a reasonable mind could fairly conclude respondent's guilt with regard to this particular element of the offense based on that testimony, we cannot find that the circuit court erred when it denied the motion for a directed finding. Accordingly, as it was not properly preserved, respondent's claim regarding the motion for a directed finding is forfeited on appeal.

¶ 25                                     C. Sufficiency of the Evidence

¶ 26        Respondent argues that even if the circuit court did not err by denying his motion for a directed finding, the evidence regarding whether he had been issued a FOID card was insufficient to support a conviction.

¶ 27        "In reviewing a sufficiency of the evidence claim, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (emphasis in original) (internal quotation marks omitted.) *People v. De Filippo*, 235 Ill. 2d 377, 384-85 (2009). "All reasonable inferences from the evidence must be drawn in favor of the prosecution." *People v. Newton*, 2018 IL 122958, ¶ 24. "In weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence

10

before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Hardman*, 2017 IL 121453, ¶ 37.

¶ 28 "When considering a challenge to the sufficiency of the evidence, it is not the function of the reviewing court to retry the defendant." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). "The testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant." (Internal Citation Omitted.) *Id*. "A reviewing court will not reverse a conviction simply because the evidence is contradictory or because the defendant claims a witness was not credible." *Id*. A reviewing court "will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Campbell*, 146 Ill. 2d 363, 375 (1992).

¶ 29 The same potential inferences that allow for the circuit court's denial of respondent's motion for a directed finding similarly prove sufficient under this analysis. In addition, respondent chose to take the stand himself and, when asked, stated that he did not have a valid FOID card.This phrase could be interpreted to mean that although he may have had a valid FOID card at the time of the offense, he did not have one at the time of his testimony. That said, it would also be reasonable, in the context of a trial in which the question of whether he had a valid FOID Card at the time of the offense was a crucial question, to interpret the question and response to be referring to the time of the offense, even if the question was inartfully phrased. Drawing all inferences in favor of the prosecution, the evidence presented was sufficient for a rational trier of fact to find that respondent lacked a valid FOID Card at the time of the offense. Accordingly, the evidence presented was sufficient to sustain respondent's adjudication.

¶ 30                                       D. Admonishment

¶ 31        Respondent argues that the circuit court improperly admonished him regarding his right to testify or not testify, and thereby infringed upon his fourteenth amendment due process right to a fair trial where such admonishment prejudiced the outcome of the trial. U.S. Const., amend. XIV.

¶ 32        Respondent acknowledges that he failed to preserve this error via objection and a post-trial motion, but asks that we review it nonetheless, either under plain-error review or under a lowered standard applicable to potential judicial misconduct. Respondent is correct that "a less rigid standard of waiver applies when the issue involves potential misconduct by a trial judge." *People v. Vaughn*, 354 Ill. App. 3d 917, 924 (2004). As the alleged error here concerns the circuit court's behavior, we will review the alleged error. *People v. Davis*, 185 Ill. 2d 317, 343 (1998). As this is a question of law, our standard of review is *de novo*. *Vaughn*, 354 Ill. App. 3d at 926.

¶ 33        Respondent devotes considerable effort to demonstrating that the admonition from the circuit court was unnecessary but fails to show that unnecessary equates in any way to improper. We fail to see any legal pertinence to that element of respondent's claim.

¶ 34        Respondent cites four cases on this subject. All four concern instances in which a defendant chose not to testify after an admonition, or lack thereof, from the circuit court. *Id.*, *People v. Medina*, 221 Ill. 2d 394 (2006), *People v. Smith*, 176 Ill. 2d 217 (1997) , *People v. Peden*, 377 Ill. App. 3d 463 (2007). Of those, *Smith* and *Medina* cite to a federal case, *Martinez*, for its explanation of why a circuit court is not required to admonish a defendant regarding his right to testify, most notably, in this case, the third of seven enumerated reasons: "Third, by advising the defendant of his right *to* testify, the court could influence the

defendant to waive his right *not* to testify, thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right." (internal citation omitted) (emphasis in original) *U.S. v. Martinez*, 883 F.2d 750, 760 (1989). In all three cases, this warning, that a circuit court's admonition might sway the defendant, is presented as a reason that such an admonition is not required, *not* as a reason that such an admonition is improper. *Id.*, *Medina*, 221 Ill. 2d 407-08, *Smith*, 176 Ill. 2d at 234-35. However, even if we were to accept that all of the caselaw concerning defendants who waived their right to testify after an admonition from the circuit court applies equally to defendants who choose to testify after an improper admonition, the circuit court's admonishment in this case does not rise to the level of impropriety.

¶ 35      *Vaughn* is instructive on this matter:

"[I]t is the defense counsel's responsibility to advise a defendant about his right to testify and explain any advantages or disadvantages of that right. However, the ultimate decision of whether to testify is made by the defendant.

When a defendant is represented by counsel, it is left to the discretion of the trial court whether to inform the defendant of the right against self-incrimination. If a trial court chooses to advise a witness of his rights, the trial judge must walk the fine line between, on the one hand, fully advising the witness of the danger of self-incrimination and the right not to testify, and, on the other hand, threatening the witness to an extent which materially impairs the defendant's due process right to present witnesses in his defense.

A defendant is deprived of his due process right to a fair trial if the judge's admonitions cause the defendant not to testify and are improper, thereby prejudicing

13

the outcome of the trial. In other words, even if the remarks are improper and cause the defendant not to testify, a defendant is not deprived of his due process right to a fair trial unless it affects the outcome of the trial." (internal quotations omitted) (internal citations omitted) *Vaughn*, 354 Ill. App. 3d at 925.

¶ 36    "The specific facts and circumstances of the case must be considered to determine whether the admonitions are improper." *Id*. Examples provided in *Vaughn* include where the trial judge threatened a witness with an indictment for perjury; where a judge editorialized that it would be "foolish" for a witness to testify; where the admonitions are based on mistaken facts of a plea bargain; where they are excessive, "such as where a judge informs a witness of his right not to testify on six occasions even though the witness indicated on more than three occasions that he wished to testify;" and where a judge's admonitions "indicate the judge is no longer acting in the role of a neutral decision-maker." *Id*. at 925-26.

¶ 37    The scenario presented in the case at bar does not even loosely resemble any of the examples presented in *Vaughn*. Here, the following exchange is what respondent presents as improper:

> "DEFENSE COUNSEL: Judge – Judge, I talked to the minor earlier today, you know, about his right to testify. That it was his right to remain silent. That is, you know, solely his choice that only he can decide.
>
> And now I believe it's my understanding that he does not want to testify. Is that correct that you don't want to get up and talk?
>
> (Discussion off the record.)
>
> COURT: All right. And that's right. [Respondent], this is your decision. You have your attorney here that's here to represent you, but this is the decision that you get to

make so you have the right to testify, and you have the right not to testify. You understand that? You're nodding your head yes.

RESPONDENT: I would like to testify to my innocence.

COURT: You would like to testify? Okay.

DEFENSE COUNSEL: You want to get up and talk?

COURT: So the minor said that he would like to testify.

DEFENSE COUNSEL: Okay. Your Honor, we call [respondent]."

¶ 38    At the beginning of the exchange, defense counsel seeks to confirm with the respondent that he did not wish to testify. At no point on the record does respondent confirm this. After a conversation off the record, the court seemed to confirm a statement from another individual, presumably respondent or defense counsel, stating that it was respondent's choice. The circuit court presented the right to testify and not to testify equally, with no emphasis or indication that either was preferable or superior. After the circuit court asked respondent if he understood, respondent stated that he would like to testify. It is difficult to conceive of a more neutral stance from the court. To find that this admonition was improper would render *any* admonition from the circuit court improper where the respondent's decision to testify ultimately resulted in testimony that could be interpreted to be against his or her own interest. Were that the supreme court's intent, it would have found an admonition from the circuit court to be impermissible, not merely unnecessary.

¶ 39    Additionally, the only prejudicial effect that respondent suggests resulted from his testimony is that he testified that he did not have a FOID card. As that fact had already been established by Officer Webb's testimony, we see no clear prejudice from respondent's choice to testify. Accordingly, we find no error on the part of the circuit court.

15

¶ 40                              III. CONCLUSION

¶ 41          For the foregoing reasons, we affirm respondent's adjudication.

¶ 42          Affirmed.